## Samuel McClure

*v.*

## Robert Wilson.

1. CONTRACT — *subscription paper — binding force of.* Where several persons signed a subscription paper, whereby each one agreed to pay the sum set opposite his name, for the purpose of procuring substitutes for the relief of the drafted men of a certain township, and such substitutes were furnished by one of the subscribers, by means of money advanced and borrowed by him upon the faith of such subscriptions, — such person so advancing the money may maintain his action against any subscriber who neglects or refuses to pay his subscription.

2. In such case, the party advancing the money, upon the faith of the subscriptions, becomes a proper promisee, or payee.

3. SAME—*verbal declaration to subscribe money—binding.* When a person, at a public meeting, held for the purpose of raising money to procure substitutes for the drafted men of the district, verbally declared, that he would give $400 for such purpose, such declaration constitutes a binding promise on his part, to pay such sum to any person who accomplishes the object.

4. SAME — *subscription paper — evidence of promise.* A subscription paper is evidence to all who see it, that the persons whose names appear upon it as subscribers, have promised to pay the amounts set opposite their respective names.

APPEAL from the Circuit Court of Edgar county; the Hon. JAMES STEELE, Judge, presiding.

This was an action of assumpsit brought by the appellant against the appellee, in the Clark County Circuit Court, and taken thence by change of venue to the Edgar County Circuit Court. The facts in the case are fully stated in the opinion.

Mr. JOHN SCHOLFIELD, for the appellant.

Mr. JAMES A. EADS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought by Samuel McClure, against Robert Wilson, for money paid, laid out and expended, and lent and advanced by the plaintiff to the defendant at his special instance and request. The plea was non-assumpsit, and a trial by the court, by consent, without a jury.

The plaintiff, to maintain the issue on his part, offered in evidence a small blank book belonging to him, having this heading: "We the undersigned agree to give the amount set opposite our respective names, for the purpose of procuring substitutes for the drafted men of Douglas township," below which was the defendant's name, placed there by his direction, for $400. The plaintiff then offered to prove by the depositions of several persons the circumstances under which this subscription was inaugurated. That about the 20th of November, 1864, a meeting of the citizens of Douglas township was held,

for the purpose of raising money, and taking the necessary steps to procure substitutes to relieve that township from the military draft which had just then taken place; that the meeting was regularly organized by the election of a president and secretary; that plaintiff and defendant were both members of this meeting, and participated in it; that, after discussing various plans, the meeting agreed to make up the money necessary to procure substitutes by a subscription; that thereupon the paper, with the heading above copied, was drawn up by the secretary of the meeting, and signed by various parties; that the plaintiff and his son subscribed one substitute, and the defendant directed the secretary to sign his name for $400, declaring, that he would give that sum and more, if necessary to relieve his sons from the draft; that during the deliberations of this meeting it was mentioned and understood, that the money to relieve the township from the draft would have to be raised immediately, and that the subscribers to the list were unable to pay the money down; that it was then inquired "where is the money to come from?" In reply to this question, the plaintiff and one Fitzsimmons said the money could be raised, but must be paid back by the first of February; on defendant asking if the time could not be extended, Fitzsimmons replied the time was long enough; all the persons present seemed anxious that the money should be speedily raised, and Andrew McClure and Robert Brown, were appointed commissioners to go to the provost marshal's office of the district at Olney, to ascertain for what sum substitutes could be had; that the plaintiff took charge of the subscription list, and with it went to William H. Coons, showed it to him, and borrowed of Coons on the faith of it $1,000, with which to procure substitutes, expecting to collect the money to repay it, from the subscription list. Soon after this borrowed money was received by plaintiff, he went to Olney to procure substitutes, and actually put into the army five or six substitutes, in place of the drafted men of this township, for each of which he paid $650, one of these substitutes was for his own son; that by putting in these substitutes the town was relieved from the draft, so far as those drafted had

reported themselves at Olney; that plaintiff made an arrange-
ment with the provost marshal of that district, by which all
persons who had been drafted, and had failed to report, should
be discharged from liability on the draft on reporting them-
selves at the provost marshal's office at Olney.

The subscription book had no government stamps upon it.

The defendant objected to all this evidence, which the court
sustained, and the plaintiff excepted. The court then found
for the defendant, and judgment was entered against him
for the costs. To reverse this judgment, this appeal is pros-
ecuted.

The appellant makes these points: That the undertaking
of the defendant was valid and binding upon him. That
the plaintiff, having advanced the money, became the promisee,
and therefore could maintain this action. That the subscrip-
tion book was competent evidence without a government stamp.

A long and undeviating current of decisions by this court,
and by the courts of our sister States, and which were cited by
appellant's counsel, has settled the binding force of contracts of
this description.

The appellee contends, that, in order to their validity, there
must be either a promisee named or in contemplation, as a
corporation to be created thereafter, or else there must be a sub-
sequent agreement by which some party is authorized to expend
money upon the faith of the subscription, and that it is only
upon the last named contingency that there can be any pre-
tense of a claim in this case. He insists, that the cases cited
by appellant fall under one of these classes of cases.

The case of *Roberts* v. *March et al.*, 3 Scam. 198, first cited, was
a case where it appeared the sums subscribed were to be paid to
certain persons named in the subscription paper as trustees for the
purpose of building "the church at the Bethel camp ground."
It was proved there was no consideration for the undertaking
of the defendants other than this signing of the subscription
paper; it was also proved, that the church was built, and that
the suit was brought for the benefit of the mechanic. This
court held, that the erection of the building fixed the liability

of the subscriber to the mechanic who performed the work. The court refer with approbation to the case of *Bryant* v. *Goodnow*, 5 Pick. 228, where it was held, that where one subscribes with others, a sum of money to carry on some common project, lawful in itself, and supposed to be beneficial to the projectors, and money is advanced on the faith of the subscription, an action for money paid, laid out and expended may be maintained, to recover the amount of the subscription.

The next case was *Cross* v. *The Pinckneyville Steam Mill Co.*, 17 Ill. 54, which was an action to recover three installments, of fifteen per cent each, on two shares of stock alleged to have been subscribed by appellant to this company. The subscription paper for this stock was signed by Cross, about one month before any steps had been taken to incorporate the company. This court held the subscribers liable for the calls.

The next case was the *Tonica and Petersburgh R. R. Co.* v. *McNeely, Admr.*, 21 Ill. 71, in which the general doctrine was stated, that, where the objects of a contract are lawful, and it is founded upon a good consideration, and is entered into by parties capable of contracting, it creates a legal obligation which may be enforced according to its terms.

The case of *Prior et al.* v. *Cain*, 25 Ill. 292, was upon a subscription paper signed by the defendant, and others, by which he bound himself to pay twenty dollars for the purpose of building a church in Adams county for the use of the Christian church. With the introduction of this paper the plaintiffs offered to prove, that, at a meeting held in the neighborhood of the plaintiffs and defendant, the plaintiffs were selected to get up this subscription paper and collect the subscriptions, and to act as a building committee in building the church; that they did, on the faith of these subscriptions, go on and build the church, according to the terms of the subscription paper, and did, in so building the church, and upon the faith of those subscriptions, become personally liable in a large sum of money. The court rejected this evidence. The plaintiffs then offered to prove, that, after the subscription paper was signed by the defendant, and before the commence-

ment of the suit, he admitted he had subscribed twenty dollars to build the church, and that he would pay it, but would not give his note for it; and they also offered to prove, that, at the time defendant promised to pay the subscription, he knew that the plaintiff had become personally liable on the faith of these subscriptions for the building of the church.

The court rejected all this evidence, and, on error to this court, it was held a correct principle, that a person making a promise, on the strength of which other persons advance money, or furnish labor or materials, is bound in good faith to fulfill the obligation, the party paying the money or furnishing the labor and materials having a right to rely on such subscription. And held further, that the court should have received the evidence relating to the subscription, and also the defendant's admissions.

The case of *Griswold* v. *Trustees of Peoria University*, 26 Ill. 41, arose on a paper of this description, and the suit was brought on the instrument: "We, the subscribers, agree to pay the sum set opposite our respective names, for the erection of a building, and in defraying the expenses of putting in operation the college of the synod of Illinois, at Peoria, to be paid as the money shall be required to meet the expenditures, as incurred for the purposes aforesaid."

The defendant objected to the introduction of this paper in evidence, on the grounds, among others, that *by it the money* was not payable to the plaintiff; that there was no payee mentioned in the instrument, and that no consideration appeared for the agreement.

The proof showed, that the subscription was made in anticipation of a charter. A judgment was rendered against the defendant, which, on appeal to this court, was affirmed, this court holding, that, if the corporation incurred liability on the strength of defendant's subscription, as well as that of others, a suit as for money paid, laid out and expended, would lie against them. The plaintiffs had a right to become the payees and sue as such — referring to *Prior* v. *Cain, supra.* And the court say, in such case the contemplated company or college, under the synod of Illinois, to be located at Peoria, is a proper

promisee; and the promise of the subscribers is good to them as a third person who, on the faith of it, had incurred expense and liabilities; and he ought, in all justice, to pay it.

As against the authority or application of these cases, appellee cites *County Commissioners of Randolph County* v. *Jones*, Breese, 237 (new edition), and *Mayo* v. *Chenoweth*, id. 200.

In a late case in this court, decided at April Term, 1866, *Thompson* v. *The Board of Supervisors of Mercer Co.* (40 Ill. 379), which was an action on a subscription by Thompson, to pay three thousand dollars if the county seat of Mercer was located at a particular place, the land of which he owned, these cases were reviewed, and it was held the subscription was binding, and the judgment was affirmed.

We see but slight difference between the case now before us, and the cases of *Prior et al.* v. *Cain, Robertson* v. *Marsh et al.*, and *Griswold* v. *Peoria University*, above cited. If they were correctly decided, and we do not question it, the same principles must control here.

The plaintiff here offered to prove, that, on the faith of this subscription of the defendant, he had advanced a large sum of money, and become liable for more, to relieve the township from the draft, and that it was relieved. And wherein does it differ from the case of *Robertson* v. *Marsh et.al.?* In that case, all the proof of consideration was the signing of the subscription paper, and the fact that the church was built. If the erection of the building fixed the liability of the subscribers to the mechanic who performed the work, why does not the relief to this township, pursuant to the agreement, fix the liability of the defendant to pay what he engaged to pay therefor?

But it is said there was no promisee; nor was there any in Prior's case, in Robertson's case, or in Griswold's case. They who advanced money, did work, or furnished materials, were proper promisees and payees.

It is, however, insisted, as a conclusive objection to a recovery in this case, that the subscription paper was not stamped with a government stamp, as the revenue laws of the United States require.

It will be observed, that the action is not brought on that paper. It is an action for money paid, laid out and expended; and, though the subscription paper may be invalid as an instrument of evidence (about which we express no opinion, as, in our view of this case, it is immaterial), the other evidence, which the plaintiff offered and which was ruled out, that, at the meeting, the defendant declared he would give four hundred dollars and more to get his sons relieved from the draft, is a binding promise upon him to pay that amount to any one who should accomplish this object.

If I have valuable property in imminent danger, and I make proclamation that I will give fifty dollars to save it, and a stranger undertakes the labor and does save it, on what principle of law or justice is it that I should not pay? So, here, the defendant declared he would give four hundred dollars to save his sons from the draft, and put the declaration in writing. The plaintiff incurred the expense and trouble necessary to save his sons, and did save them; why then should he not be paid the amount promised?

But there is another view of this case. Although the subscription paper might be invalid as evidence, still it was capable of being read and understood as well without a stamp as with one; and, if the plaintiff, on the faith of it, advanced his money for the defendant's benefit, he ought to recover it in this action. The subscription was evidence to those who saw it, that the defendant had made this promise.

We see nothing to prevent a recovery by the plaintiff.

The Circuit Court having entertained different views, the judgment of that court must be reversed and the cause remanded that a new trial may be had.

*Judgment reversed.*