JACOB FOUST, Adm'r, v. BOARD OF PUBLICATION et al.

BILLS AND NOTES. *Voluntary and not enforceable. When.* A promissory note made payable to the Board of Publication of the Cumberland Presbyterian Church, a corporation, after the death of the maker, "for the purpose of aiding and assisting said Board in carrying on its publishing interest," is purely voluntary, and not enforceable, and the fact that donations made to the Board were treated as assets, and liabilities created, and the policy of the Board to some extent shaped on the faith thereof, would not change the result.

FROM MONTGOMERY.

Appeal from the Chancery Court at Clarksville. GEO. E. SEAY, Ch.

J. E. RICE for Foust.

T. L. YANCEY for Board.

COOPER, J., delivered the opinion of the court.

The complainant's intestate executed in her lifetime the following instrument:

"I, Mrs. Sarah Thompson of Clarksville, county of Montgomery and State of Tennessee, do hereby bind myself, my heirs, executors and administrators, to pay to the Board of Publication of the Cumberland Presbyterian Church, located at Nashville, Tenn., the sum of five hundred dollars ($500.00) for the purpose of aiding and assisting said Board in carrying on its publishing interest. The said sum of five hundred dollars

is to become due, and is made payable from and after my natural death.    Given under my hand and seal, this 13th of April, 1876.                    her

                            Mrs. Sarah X Thompson.

                                 mark

Attest:   J. W. Riggins."

Mrs. Sarah Thompson died in the year 1879, and complainant, Jacob Foust, was appointed and qualified as administrator of her estate.    The object of this suit is to have it legally determined whether the Publishing Board is entitled to recover from the estate the amount called for by the instrument.    The chancellor decided in favor of the Board, and the distributees of the estate appealed.

The Board of Publication of the Cumberland Presbyterian Church is a corporation, chartered for the purpose of publishing and circulating the denominational books, tracts, periodicals and other printed matter which may, from time to time, be ordered by the General Assembly of the Church, or determined upon by the Board.    The policy of the Board has been to distribute gratuitously denominational books, tracts and periodicals to the extent of its pecuniary ability, and when not able to donate to sell at as cheap a rate as possible.    It has to depend largely upon donations from friends, and has received donations in the form of subscriptions, pledges and notes.    Having become considerably involved by purchases of stock, the Board appointed agents in 1874 to solicit donations, and large sums were obtained by notes on time in this way for several years.    The note in controversy was delivered

to the Board by a mutual friend. No member of the Board ever saw the intestate, or communicated with her on the subject. No other note, as far as appears, was ever received payable after the death of the maker. The donations made to the Board were treated as assets, and liabilities were created, and the policy of the Board to some extent shaped on the faith that they would be paid. No contract, however, was ever made in which the note in suit was named or used as security. Nor do the minutes of the Board show any action in relation to the note. Debts have been contracted by the Board since 1876, which remain unpaid, but the indebtedness is less than it then was.

"An attempt to reconcile all the cases which have been adjudged touching the validity of voluntary engagements to pay money for charitable, educational, religious or other public purposes would be fruitless": Per Allen, J., in *Barnes* v. *Perine*, 12 N. Y., 23. The safest course, when the authorities are hopelessly in conflict and the principles which underlie them are unsettled, is to confine the ruling to the particular case presented, and adhere as near as possible to the adjudications in which the courts concur.

The instrument under consideration contains a promise to pay, after the maker's death, the sum of money specified to the Board of Publication, "for the purpose of aiding and assisting" the Board in carrying on its publishing business. Whether we treat it as a note or simple contract, it is not obligatory without a consideration: *Tate* v. *Hilbert*, 2 Ves. Jr., 111. A consideration may be either a benefit to the maker of the

promis., or a detriment to, or obligation upon the promisee. The evidence clearly shows that there has been no such benefit to the intestate in this case, either at the time of executing the instrument or afterwards, as would constitute a consideration valuable in law to sustain the promise. · It further appears that the payee, the Board, entered into no obligation at the time of the execution and delivery of the instrument. It does not appear that the Board, in its corporate capacity, ever took any action upon the subject of the instrument, either in the way of acceptance or otherwise. No communication at any time seems to have passed between the maker and · the payee in relation to the note. The death of the promisor before the acceptance of a voluntary promise by express vote or contract, or by some unequivocal act on the faith of it to the detriment of the promisee, revokes the donation. And there is no difference in this regard between a promissory note and an ordinary contract by subscription: *Helfenstein's Appeal*, 77 Penn. St., 328; *McClure* v. *Wilson*, 43 Ill., 356; *Cottage Street Church* v. *Kendall*, 121 Mass., 528.

There can be no doubt, as said in the last of these cases, that there may be an acceptance of a voluntary donation, ·and the accruing of a detriment to the promisee sufficient to constitute a valuable consideration in law, by some unequivocal act, such as advancing or expending money, or erecting a building, in accordance with the terms of the contract, and upon the faith of the donor's promise. It is obvious, however, that to bring a case within the rule, there must be a contract

"in accordance with the terms of which" the money is expended, or act done. The injury must accrue upon entering into the contract, and not arise from a breach of it: *Gerhard* v. *Bates*, 2 El. & B., 476. The instrument in question contains no request of the maker that the payee should do anything, and no engagement on the part of the payee with the maker to do anything in consideration of the promise: *Trustees* v. *Stewart*, 1 Comst., 581. The Board of Publication, neither at the execution of the instrument nor afterwards, entered into any obligation with the maker. It might have ceased to do business at any moment. No contract was ever made, or liability incurred by reason of this donation. It has merely been treated, like other donations, as a part of the assets of the corporation for what it might be worth.

There are cases which hold that a voluntary promise for an educational, charitable or other similar object is valid, the express or implied undertaking of the promisee to faithfully appropriate the funds to the prescribed object constituting a sufficient consideration: *Ladies Institute* v. *French,* 16 Gray, 196. But the eminent court in which this doctrine seems to have originated has recently said: "In every case in which this court has sustained an action upon a promise of this description, the promisee's acceptance of the promise was shown, either by express vote or contract, assuming a liability or obligation, legal or equitable, or else by some unequivocal act, such as advancing or expending money, or erecting a building, in accordance with the terms of the contract, and upon the faith of

the defendant's promise:" 121 Mass., 530.   The present case, even if the objects of the corporation bring it within the rule of the line of cases referred to, does not show any obligation or liability of the character required.   The promise, moreover, is peculiar and one-sided. . All that the Board was to do, or was expected to do, was to take the money when paid, if it ever was paid, and use it.   The pre-existing indebtedness was no consideration for the promise: *University of Des Moines* v. *Livingston*, 25 Alb. L. J., 157.   The subsequent indebtedness is not shown to have been in any way occasioned by this subscription.   The promise was purely gratuitous, and will not be enforced by law.

The decree of the chancellor must be reversed, but the costs of the entire cause will be paid by the complainant as administrator out of the assets of the estate.