## JOHN HUDSON

*v.*

## THE GREEN HILL SEMINARY CORPORATION.

*Filed at Ottawa May 15, 1885.*

1. CORPORATION—*plea of nul tiel corporation—evidence required.* In a suit by a corporation upon an agreement in writing to pay it a sum of money, a plea of *nul tiel corporation* will not impose upon the plaintiff the burden of proving that it is in all respects a perfectly legal corporation. The plaintiff will be entitled to recover on the issue presented by such plea, by making proof that it has a *de facto* existence.

2. SAME—*proof of de facto existence of corporation—admissibility of evidence—in the case of a foreign corporation.* In a suit in this State in the name of an alleged corporation claimed to have been organized under the laws of Indiana, a special act of the General Assembly of that State purporting to legalize its incorporation, even though the act be invalid, as falling under the provision of the constitution of that State prohibiting the passage of special laws, is properly admissible in our courts as evidence of the recognition by that State of the fact that the plaintiff assumes to exist and act as a corporation, and has a *de facto* existence.

3. Upon the question of the *de facto* corporate existence of a corporation of the State of Indiana, in a suit by it in this State, in which *nul tiel corporation* is pleaded, a decision of the Supreme Court of the State of Indiana not pertinent to the issue being tried, is properly excluded as evidence to the jury.

4. SAME—*what will show the de facto existence of a corporation.* In a suit by a corporation upon a promissory note or written obligation made by the defendant for the payment of money, the execution of such note or obligation will afford sufficient *prima facie* evidence of the *de facto* corporate existence of the plaintiff, and no further proof thereof is necessary until such proof is rebutted.

5. An association may be regarded as a *de facto* corporation when there is a law authorizing the creation of a corporation of its class and powers, and when there is an attempt, in good faith, to comply with the law; and the only error is in filing a certified copy of the articles of association with the proper depositary, instead of a duplicate of such articles, and when there is also an exercise of corporate functions by the association.

6. SAME—*corporate existence—when strict proof required—distinction in the application of the rule.* Where a corporation brings suit to recover for a subscription to its capital stock, the existence of the corporation and its capacity to lawfully issue stock are conditions precedent to its right of recovery. If the stock can not be lawfully issued, the subscriber can not get what he has contracted for, and there is an entire failure of consideration. In such a case it is necessary to give strict proof of incorporation,—in other words, that the plaintiff is a corporation *de jure.*

7. But this rule has no application to the case of a subscription to a corporation for which the subscriber is to receive no stock in consideration of his undertaking. The real consideration in such case upon which the plaintiff is entitled to recover, is that it has expended money, furnished materials or bestowed labor upon the faith of the subscription, and not any special benefit derived, or to be derived, by the promisor from the corporation.

8. SAME—*who may question validity of a foreign corporation.* The authority to inquire by *quo warranto* whether a corporation *de facto*, organized and acting under the laws of another State, is in all respects a legal and valid corporation, belongs to such State, and to it alone. If such State fails to institute proceedings to divest it of its assumed franchises, no one else can do so.

9. FOREIGN STATUTES—*statutes of Indiana—conditions to their taking effect—as to time, etc.* The constitution of Indiana provided that no act should take effect until the same was published, and circulated in the several counties by authority, except in case of emergency, which should be declared in the preamble or body of the act. In 1855, an act was passed which declared an emergency existed, and that it should be in force from and after its passage, and publication in the "Indiana State Sentinel" and "Journal:" *Held,* that the publication in the papers named was a condition, only, of the law taking effect before it otherwise would, and that a failure to have the same so published did not prevent its becoming a law upon the publication and distribution of the body of the laws passed at that session.

10. SAME—*authentication.* An act of the legislature of the State of Indiana authenticated by the Secretary of State of that State, by having the seal of State affixed thereto, in conformity with section 905 of the United States Revised Statutes, is a sufficient authentication, without the attestation of any officer or any other proof; and it is no objection that it does not appear upon the face of the act that it was signed by the Governor.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. Franklin Blades, Judge, presiding.

This was an action of assumpsit upon an instrument of which the following is a copy:

"$1000.               Watseka, Ill., *March 2, 1874.*

"On the presentation of this note, with the accompanying certificate, signed by the agent of the Green Hill Seminary, for value received, I promise to pay to the order of the treasurer of said seminary one thousand dollars, with six per cent interest from date of said certificate until paid. Payable at Watseka, Illinois, without relief from valuation or appraisement laws.               John Hudson."

The following certificate was attached in blank, but which, on the first of June, 1874, was filled up and dated as of May 1, 1874, and signed:

"This is to certify that there is now raised, by note, subscription and otherwise, the sum of $10,000, for the endowment of one professorship in Green Hill Seminary, located at Milford, Warren county, Indiana, this 1st day of May, 1874.            J. Cowgill, Agent."

The defendant pleaded as follows: First, *nul tiel corporation;* second, that the note sued on was signed upon the representations (which were false,) that plaintiff was a corporation, that James Cowgill was treasurer, that plaintiff was fully authorized to establish and run said seminary, and was fully empowered to collect subscriptions that should be made; third, the same as the second, with the addition that none of the sums donated should become due till $10,000, that could be collected, were donated; and fourth, the same, with the addition that it was fully organized, and had been for a long time, was fully empowered to appoint all kinds of agents of said corporation, and that the agent would sign the certificate

when $10,000 was subscribed that it could collect. Plaintiff demurred to each of these pleas, but the court overruled the demurrer, and plaintiff thereupon, under leave of the court to reply double, filed a general replication to each of the pleas, and also a special replication setting up the statutes of Indiana of February 28, 1855, March 9, 1867, and February 19, 1881; and to these the defendant filed twelve rejoinders, as follows, to-wit:

*First*—That the act of February 28, 1855, was never published in the "Indiana State Sentinel" and "Journal."

*Second*—That the act of February 19, 1881, was unconstitutional in this, that it conflicted with the constitution of Indiana, which provides that "corporations, other than banking, shall not be created by special act, but may be formed under general laws."

*Third*—That the act of February 19, 1881, never became a law, because not signed by the Governor of Indiana.

*Fourth*—That the attempts at organization by plaintiff, under act of February 28, 1855, were null and void because a duplicate certificate of organization was never filed with the Secretary of State.

*Fifth*—That the law of February 19, 1881, in effect creates plaintiff a corporation, and is in conflict with the constitution of Indiana, which provides: "In all cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

*Sixth*—The same as the fourth.

*Seventh*—That the act of February 19, 1881, was void because it conflicted with the constitution of Indiana, which provided: "No act shall be revised or amended by mere reference to the title, but the act revised or section amended shall be set forth and published at full length."

*Eighth*—That the act of February 19, 1881, embraced more than one subject, and was in conflict with the constitution, which provides: "Every act shall embrace but one subject

and matter properly connected therewith, which subject shall be expressed in the title."

*Ninth*—That the act of February 19, 1881, is void because a majority of all the members elected to the House of Representatives did not vote for said bill, as the constitution of Indiana requires.

*Tenth*—That the same act is void because a majority of the Senators did not vote for it.

*Eleventh*—That the same act is void because the vote on the passage of the bill was not taken by yeas and nays, as the constitution of Indiana requires.

*Twelfth*—That the same act is void because the bill was not read by sections in the House of Representatives on three several days, as the constitution requires.

The circuit court sustained demurrers to the second, fourth, fifth, sixth, seventh and eighth of these rejoinders, and to the other rejoinders the plaintiff sur-rejoined.

On final trial, judgment was rendered in favor of the plaintiff, for the sum of $1313.30. On appeal to the Appellate Court for the Second District this judgment was affirmed, and this record is brought here by appeal from the last named judgment.

Other matters material to an understanding of the questions discussed appear in the opinion of the court.

Messrs. DOYLE, MORRIS & PIERSON, for the appellant:

The acts done under the statutes of 1855 or 1867, so far as incorporation is concerned, were void, and no power to appoint agents or collect debts, as such corporation, existed thereby.

The act of 1855 being a foreign law, we are bound by the construction put upon it by the courts of that State. The Supreme Court of Indiana, under a similar law, decided, in an action by an assignee of a purported corporation against a subscriber to the capital stock, that it was necessary that

the assignee should prove that a duplicate was filed in the office of the Secretary of State, before it could recover the subscription, and that a copy did not fulfill the law. (*Nelson* v. *Blakely*, 54 Ind. 30.) The court erred in refusing to admit this decision in evidence.

A corporation can not be created by agreement of parties. It can only be created by legislative act, and the statute must be complied with. If the act requires a license, that must issue before it becomes a corporation. *Stone* v. *Flagg*, 72 Ill. 401; *Bigelow* v. *Gregory*, 73 id. 197.

Courts will not take notice of foreign laws, but they must be proved as other facts. *Hyman* v. *Bayne*, 83 Ill. 265.

The act of 1881 was unconstitutional, as the effect of it was to create a corporation other than banking, by a special act, and a general law could have been made applicable. *Kimball* v. *Town of Rosendale*, 42 Wis. 407; *Marshall* v. *Silliman*, 61 Ill. 218; *Concord* v. *Portsmouth Bank*, 92 U. S. 625; *Aspinwall* v. *County of Davis*, 22 How. 376.

A curative act must be confined to validating such acts as the legislature might previously have authorized. The legislature can not ratify what it could not authorize at the time of the ratification. Cooley's Const. Lim. 381; *Wiester* v. *Hade*, 52 Pa. 474; *Mills* v. *Charlton*, 29 Wis. 400; *Cass* v. *Dillon*, 2 Ohio, 607; *State* v. *Trustees*, 8 id. 394.

Section 23, article 11, of the Indiana constitution, reads: "Corporations other than banking shall not be created by special act, but may be formed under general laws." If the legislature could not have created this corporation by special act, it can not bring it into existence by a special curative act. Cooley on Taxation, 227; *Wilson* v. *McKinney*, 52 Ill. 44; 12 Pet. 731.

The law of 1855 should not have been read without proof that it had been published in the two papers named. The legislature declared, by section 9, that the act should be in force after its publication in these journals, and it could no

more take effect until this was done than if it was never passed. *State* v. *Donelly*, 8 Clark, 396.

It follows, from the very principles upon which the proof of foreign laws is required, that such proof should be addressed to the jury, and not to the court. *Charlotte* v. *Choteau*, 33 Mo. 194; *State* v. *Twitty*, 2 Hawks, 441; *De Sobry* v. *De Laistre*, 2 Har. & J. 191.

Messrs. KAY & EUANS, and Mr. CHARLES H. WOOD, for the appellee:

It is enough, in ordinary actions by a corporation under the plea of *nul tiel corporation*, to prove the existence of the corporation *de facto*. It is enough to prove existence under color of law, without proving a regular origin of existence in conformity to law. Abbott's Trial Evidence, 18; *Baker* v. *Backus*, 32 Ill. 81; *Chiniquy* v. *Catholic Bishop of Chicago*, 41 id. 149; *Mitchell* v. *Deeds*, 49 id. 417; *Railroad Co.* v. *Railway Co.* 75 id. 113; *Jones* v. *Dana*, 24 Barb. 398.

By executing a deed to a corporation the grantor recognizes its existence, and that is sufficient to overcome ·his plea of *nul tiel corporation*. Wood v. *Kingston Coal Co.* 48 Ill. 356.

The second rejoinder was bad, as attempting to tender an issue for a jury as to the constitutionality of the statute of 1881. Such a matter could only be for the court. *Hall* v. *Costello*, 48 N. H. 179; *Ely* v. *James*, 123 Mass. 37; *Kline* v. *Baker*, 99 id. 255.

The constitutional power of the legislature to pass such an act can not be questioned. *Schofield* v. *Watkins*, 22 Ill. 66; *Mitchell* v. *Deeds*, 49 id. 416.

In the following cases the Supreme Court of Indiana has held it was competent, by a curative statute, to make a void thing valid: *Maxey* v. *Wise*, 25 Ind. 1; *Walpole* v. *Elliott*, 18 id. 258; *Board of Comrs.* v. *Bright*, id. 93; *Andrews* v. *Russell*, 7 Blackf. 474; *Grimes* v. *Doe*, 8 id. 381.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

*First*—The plea of *nul tiel corporation* did not impose the burden upon appellee of proving that it was, in all respects, a perfectly legal corporation. It was entitled to recover on the issue presented by that plea, on making proof that it had a *de facto* existence, and the execution of the instrument upon which the suit is brought was sufficient *prima facie* evidence of the existence of appellee as a corporation, and no further proof thereof was necessary until such proof was rebutted by appellant. *Brown et al.* v. *Scottish-American Mortgage Co.* 110 Ill. 235; *Wood* v. *Kingston Coal Co.* 48 id. 356; *Mitchell et al.* v. *Deeds,* 49 id. 417. See, also, *Cincinnati, Lafayette and Chicago Railroad Co.* v. *Danville and Vincennes Railroad Co.* 75 Ill. 113; *Illinois Grand Trunk Railroad Co.* v. *Cook, Admr.* 29 id. 237; *Tarbell* v. *Page et al.* 24 id. 46; *Louisville, New Albany and Chicago Ry. Co.* v. *Shires,* 108 id. 617; *Osborn* v. *The People ex rel.* 103 id. 224.

In *Baker et al.* v. *Neff,* 73 Ind. 68, objection was urged that a corporation could not exist, under the general law of that State, until a duplicate of the articles of incorporation was filed in the office of the Secretary of State; but the objection was overruled, the court, among other things, observing: "If appellants were correct in their theory that there was no corporation until the duplicate of the articles of association was filed in the office of the Secretary of State,— a point we need not, and do not, decide,—they are not in a situation to successfully urge it, because they are conclusively estopped by the deed made to the association, wherein it is recognized and acknowledged to be a corporation." And there was like ruling, by the same court, in *Williamson* v. *Kokomo Building and Loan Association,* 89 Ind. 389. In that case, as here, a copy, instead of a duplicate, was filed with the Secretary of State, and the court said: "Where persons

assume to incorporate under the laws of the State, and in part comply with their requirements, assume corporate functions and transact business as a corporation, private persons can not collaterally question the right of such an association to a corporate existence, although there has not been a full compliance with the provisions of the statute. (*Baker et al.* v. *Neff*, 73 Ind. 68.) This rule is not limited to cases where one, by contract, admits corporate existence, but is a rule of general application." And, after some further discussion, the court proceeds: "The rule stated by us does not go to the extent of precluding strangers from showing that there was no law authorizing a corporation, nor from showing that there was no attempt at corporate organization, nor any assumption of corporate powers. (*Oroville Railroad Co.* v. *Plumas Co.* 37 Cal. 354.) Where, however, the acts done by persons assuming to act as a corporation are such as to constitute them a *de facto* corporation, a collateral attack by a private person will, as a general rule, be unavailing. Without attempting to define what a *de facto* corporation is, we adjudge that an association may be regarded as a *de facto* corporation where there is a law authorizing the creation of a corporation of its class and powers, and where there is an attempt, in good faith, to comply with the law, and the only error is in filing a certified copy of the articles of association, instead of a duplicate, with one of two designated depositaries, and where there is also an exercise of corporate functions." And so it follows this was a good *de facto* corporation in the State of Indiana, where it had its origin, notwithstanding the objection of appellant in regard to the non-filing of the duplicate articles of association.

Abbott, in his work on Trial Evidence, page 19, sec. 3, says: "The cases in which it is necessary to give strict proof of incorporation,—that is, to prove not only the being, but the right to be,—are: First, actions by the State to ascertain or to put an end to corporate existence; second, proceedings

by a private corporation in the exercise of a franchise in derogation of common right,—for instance, to divest title to private property; third, proceedings of a penal character by a private corporation; fourth, actions on contracts, like subscriptions for stock, if the very consideration is the organization of a corporation having a right to existence,—in such cases the inquiry may extend to the due compliance with all the requirements of the law, but often, in these cases, it is narrowed or precluded by estoppel or admission; fifth, where the question is whether there is corporate power to take by will, sufficient regularity of origin to show an attempt in good faith to comply with the law may be required."

There can be no reasonable pretence that the present case falls within either of these exceptions; but *Nelson* v. *Blakely,* 54 Ind. 30, *Stowe* v. *Flagg et al.* 72 Ill. 401, and *Bigelow* v. *Gregory,* 73 id. 197, cited by counsel for appellant, and *Gent* v. *Manufacturers and Merchants' Ins. Co.* 107 Ill. 652, and *Allman* v. *Havana, Rantoul and Eastern Railroad Co.* 88 id. 521, fall within the principle of the fourth exception. *Nelson* v. *Blakely,* and *Allman* v. *Havana, Rantoul and Eastern Railroad Co.,* were suits to recover for subscriptions to the capital stock of corporations. The contract in such cases is to pay for stock of a corporation, and the existence of the corporation, and its capacity to lawfully issue stock, are therefore necessarily conditions precedent to the right to sue upon the subscription. If stock can not lawfully be issued, the subscriber can not get what he contracted for. There is an entire failure of consideration,—as much so as where one contracts to buy a thing which the seller is afterwards unable to deliver because it has no existence. But appellant made no contract of subscription for stock, here. He is entitled to no stock. His promise to pay was a mere offer until acted upon; but when money was expended or materials furnished, or labor bestowed, upon the faith of it, it became irrevocable, and binding as a promise to pay, (*Pratt, Admx.* v. *Trustees,*

93 Ill. 475,) and this, although at the time the writing was executed the corporation was only in contemplation. (*Johnston* v. *Ewing Female University*, 35 Ill. 518; *Snell* v. *Trustees M. E. Church of Clinton*, 58 id. 290.) The real consideration upon which the plaintiff is entitled to recover, in such cases, is, that it has expended money, furnished materials, or bestowed labor, upon the faith of the promise in writing, and not any special benefit derived or expected to be derived by the promisor from the corporation. (*McClure* v. *Wilson*, 43 Ill. 356, and cases there cited.) In *Stowe* v. *Flagg*, the question was whether, in a contest between parties who had taken some, but insufficient, steps to organize a corporation, certain property belonged to these parties as individuals, or to the corporation they had ineffectually attempted to organize; and in *Bigelow* v. *Gregory*, the defendants, who were sought to be made liable as individuals, interposed the defence that the liability was corporate,—and in that case it was said: "And there would seem to be a distinction between the case where, in a suit between a corporation and a stockholder or other individual, the plea of *nul tiel corporation* is set up to defeat a liability which the one may have contracted with the other, and the case of a suit against individuals who claim exemption from individual liability on the ground of their having become a corporation formed under the provisions of a general statute. In the latter case a stricter measure of statutory requirements will be required than in the former."

*Second*—Appellee was organized, or attempted to be organized, under an act of the legislature of the State of Indiana, entitled "An act for the incorporation of high schools, academies, colleges, universities, theological institutions and missionary boards," approved February 28, 1855. The ninth section reads as follows: "As an informality exists in regard to the amendment to the high school law passed in 1853, rendering corporations formed under it of doubtful legality, it is therefore deemed that an emergency exists, and therefore

this law shall be in force from and after its passage, and publication in the 'Indiana State Sentinel,' and 'Journal.'" On the trial, the act was read from a book purporting to be printed under the authority of the State of Indiana, entitled as follows: "Laws of the State of Indiana, passed at the thirty-eighth session of the General Assembly, begun on the fourth day of January, A. D. 1855—By authority—Indianapolis—Austin H. Brown, State printer." But appellant objected to the reading of the same because it had not been previously proved that the act had been published in the Indianapolis "Sentinel" and "Journal," as provided in the ninth section.

By article 4, section 28, of the constitution of the State of Indiana, it is provided that "no act shall take effect until the same shall have been published, and circulated in the several counties of this State, by authority, except in case of emergency,—which emergency shall be declared in the preamble, or in the body of the law." The publication required by the ninth section was only for the purpose of giving effect to the statute, as an emergent one, before the publication and circulation of the laws of that session as a body; and whether it was thus published or not, manifestly could not prevent its taking effect upon the publication and circulation of the body of laws passed at that session. (*Mark* v. *State,* 15 Ind. 98.) Inasmuch, therefore, as this corporation was not attempted to be organized until July 23, 1868,—more than fifteen years after the enactment of the statute,—the question whether it took effect immediately, on account of publication in those journals, or only after the publication and circulation of the body of laws passed at that session, does not, in the remotest degree, affect the parties to this suit. Section 10, chapter 51, of the Revised Statutes of 1874, entitled "Evidence and Depositions," expressly provides that "the printed statute books of the United States, and of this State, and of the several States, * * * purporting to be printed under the author-

ity of said United States, any State or territory, shall be evidence in all courts and places in this State, of the acts therein contained." The objection is utterly destitute of merit.

*Third*—Objection is urged that the court erred in admitting in evidence an act of the Indiana legislature assuming to validate and legalize the appellee· as a corporation, approved February 19, 1881. We deem this question immaterial. The evidence was sufficient of the organization of at least a *de facto* corporation, under the act of 1855. The question whether it was also one *de jure*, we have shown, under point first, is immaterial. But we are also of opinion that the objections urged against the admission of the act in evidence are, in any view, not well taken. Those objections are, first, that it does not appear upon the face of the act that it was signed by the Governor; and second, that inasmuch as the act is special, it is in contravention of a provision of the constitution of the State of Indiana, which provides that "corporations, other than banking, shall not be created by special act, but may be formed under general laws." The act is authenticated by the Secretary of State of the State of Indiana, by having the seal of State affixed thereto, in conformity with section 905 of the United States Revised Statutes, (2d ed.) 1878, title 13, chapter 17, and this is held to be a sufficient authentication, without the attestation of any officer, or any other proof. 1 Greenleaf on Evidence, sec. 489; *United States* v. *Amedy,* 11 Wheat. 392; *Henthorn* v. *Doe ex dem.* 1 Blackf. 157; *United States* v. *Johns,* 4 Dall. 412.

Conceding that, under the constitutional provision referred to, it is incompetent for the legislature to render the corporation absolutely legal and valid in all respects, about which we express no opinion, still the authority to inquire, by *quo warranto*, whether, there being a corporation *de facto*, it is, in all respects, a legal and valid corporation, belongs to the State of Indiana alone. If that State does not choose to

institute such a proceeding, and oust it of its assumed franchise, no one else can do so. This act may be regarded, therefore, as evidence that that State has treated the appellee as a corporation *de facto*, for that much is recited in the preamble to the act, and that it has acquiesced in its acting as such. Although, in other words, this act might be no defence to a proceeding by the State of Indiana by *quo warranto*, or in that nature, against appellee, it is evidence of the recognition by that State that appellee assumes to exist and act as a corporation within that State, and so is competent evidence under the issue. *Central Agricultural Association* v. *Alabama Company*, 70 Ala. 120.

*Fourth*—There was evidence tending to prove, even apart from this legislative recognition and the signature to the contract, that appellee, in good faith, attempted to organize under the general law of 1855, and afterwards proceeded to act as a corporation. The weight and effect of this evidence are not within our province to discuss.

*Fifth*—It is very earnestly contended by counsel for appellant that the court erred in refusing to allow the decision of the Supreme Court of Indiana, in *Nelson* v. *Blakely*, 54 Ind. 30, to be read in evidence to the jury. But it has been seen, under point first, that the decision in that case is not pertinent to any question in this case. It could have only tended to confuse the minds of the jury, and lead them from the real questions to be decided. It was very properly excluded.

*Sixth*—The court below, in giving and refusing instructions, conformed substantially to the views we have here expressed, and there was no error in that regard. There was no evidence tending to prove fraudulent misrepresentations on the part of appellee's agent, or a failure of consideration in any other way, and we have been unable to discover any error in excluding or admitting evidence in any respect.

All the questions discussed upon this record have now been twice carefully considered by the court, and we remain of the opinion, heretofore expressed, that there is no error in the record for which the judgment below should be reversed. The judgment is therefore affirmed.

*Judgment affirmed.*