## John S. Jenks and Theodore Frothingham, Trustee, Appellees, v. Graham H. Harris, Appellant.

### Gen. No. 27,631.

1. Contracts—*construction of underwriting and loan agreement.* Defendant assumes a direct, primary obligation to plaintiffs as trustees for the payment of an unpaid balance due from him on the purchase price of corporate stock under agreements by which a syndicate was organized to purchase a specified number of shares of stock in a certain corporation for the account of the members of the syndicate who agreed to pay a portion of the purchase price in cash and the balance on call from the syndicate managers who were empowered to borrow money for the purposes of the syndicate and to pledge the stock and the syndicate agreement as security therefor and which made the syndicate managers agents for defendant to negotiate loans with the right to call on defendant for the unpaid balance, where the syndicate managers negotiated a loan and pledged the stock and the syndicate agreement with the right to call on defendant as security therefor under an agreement that plaintiffs should act as trustees for the lenders and exercise all the rights under the agreements.

2. Contracts—*when agreement imposes direct liability for money lent.* Defendant is liable as for money paid out, loaned and

advanced by plaintiffs to defendant at his special instance and request where, pursuant to an agreement by defendant as a member of a syndicate, the managers thereof negotiated certain loans to the syndicate for its purposes for which all members of the syndicate were primarily liable under the syndicate agreement, where under the loan agreement the plaintiffs as trustees for the creditors who participated in the loan represent such creditors and under the syndicate agreement the syndicate managers are empowered to negotiate the loan with any borrowers and to bind defendant to any lender who might be found.

3. FRAUD AND DECEIT—*sufficiency of evidence of fraud to raise issue of fact.* In an action against a member of a syndicate organized to purchase the stock of a certain corporation under an agreement by which the members paid a portion of the purchase price in cash and agreed to pay the balance on call by the syndicate managers, with provisions for the syndicate managers to borrow money and pledge the stock, the syndicate agreement, the subscriptions and the right to call the unpaid balances on such subscriptions as security therefor, a member of the syndicate sued for the unpaid balance by the trustees for the participants in a loan to the syndicate does not raise an issue of fact for the jury under a plea that the corporation was insolvent at the date of the agreement to the knowledge of one of the trustees and that the trustee also knew of misrepresentations by one of the syndicate managers to defendant in that respect, where there is no evidence that the corporation was insolvent or that the trustee knew of any representation to defendant.

4. CONTRACTS—*when defense of fraud immaterial.* Under an agreement by which a syndicate was organized to purchase the capital stock of a corporation to be held and managed by the syndicate managers who were empowered to borrow money and pledge the stock as security therefor, a plea that one of the syndicate managers and a bank to which he was indebted conspired to defraud the corporation in question by selling to it worthless assets in which the bank was interested, does not raise an issue of fraud to be submitted to the jury in an action by lenders of money to the syndicate to enforce the syndicate agreement against the members thereof for enforcement of the debt, where there is no evidence that the lenders or their trustees, the plaintiffs, had notice of the alleged conspiracy and the syndicate agreement specifically waived all such defenses for the benefit of the lenders.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed February 19, 1923. *Certiorari* denied by Supreme Court (making opinion final).

MAYER, MEYER, AUSTRIAN & PLATT, for appellant.

MILLER, GORHAM, WALES & NOXON, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This was an action in assumpsit in the trial court, where a judgment was entered upon the verdict of a jury as directed by the court on motion of the plaintiff for $32,349.73. The basis of the suit was the writing executed by the defendant Harris and others, therein designated as subscribers, on June 4, 1912, and delivered to George E. Shaw and Franklin M. Potts of Philadelphia, who are designated in the writing as "Syndicate Managers." All the parties to the said written agreement are therein designated collectively as "the syndicate."

The writing recites that the syndicate has been formed for the purpose of purchasing 3,000 shares of the capital stock of the Plantations Company, a corporation organized and existing under the laws of the State of Delaware, and that in consideration of the premises and mutual promises therein contained, the syndicate managers agree with the subscribers severally, and the subscribers agree with the syndicate managers and each other severally; that each of the subscribers upon signing the writing or agreement shall designate the number of shares to be bought for his account, and agrees to pay to the syndicate managers for each share so designated $25; that thereby he binds himself to make further payments from time to time upon call by the syndicate managers for a sum equal to pay the balance of $75 a share upon the number of shares designated by him, and also for one share of the proportional part of interest and carrying charges and the expenses chargeable thereto under the terms of the agreement.

The writing or agreement further provides that the

syndicate managers, without calling upon the subscribers in order to provide the balance of $75 a share for the purchase of the stock, may borrow the sum on behalf of the syndicate upon such terms as they may be able to arrange, securing the money so borrowed and interest by assigning as collateral the said stock and "this agreement and subscriptions hereunder, including the right of the syndicate managers to call upon the subscribers for payment of their unpaid subscriptions, and in the event this agreement and the subscriptions hereunder are thus assigned, each subscriber expressly waives for the benefit of the lender any defense to the payment of his subscriptions, or any part thereof, that he may at any time have, at law or in equity, as between himself and the syndicate managers."

The writing further provides that the syndicate managers may, in their discretion, retain the stock, subject to the pledge thereof, if it should be pledged during the period fixed for the duration of the syndicate, or at any time, on payment in full of the subscriptions, might distribute same ratably among the subscribers and terminate the syndicate; and the managers were further empowered, if in their judgment it should seem desirable, or in the interests of the stockholders of the Plantations Company, that the policy of that company should be directed for a limited period by united action of the stockholders acting through representatives, to deposit all of the stock with voting trustees under a voting trust and covering a period not to exceed five years from the termination of the syndicate; and that in said case, in lieu of distributing stock on the termination of the syndicate, there should be delivered to each subscriber certificates of the voting trustees representing the deposited shares.

The writing further provided that each subscriber should receive a receipt for each initial payment, and

any person accepting an assignment of a receipt or receiving a new receipt should be bound by the terms of the agreement as fully as if he had signed the same, but such assignment or transfer should not release the original subscriber, except with the consent in writing of the syndicate managers and, if the agreement of writing had been pledged as security, the consent of said pledgees. Further, that the failure of any subscriber to perform his undertakings should not release any other subscriber, and that upon default of any subscriber the syndicate managers should have the right in their discretion to exclude such defaulter from all interest in the syndicate and to forfeit any payment which he might have made. The writing expressly provided that the subscribers and the syndicate managers should not be ·onstrued to be partners with each other, or rendered liable to contribute more than their subscription, and that not only the parties, but their successors, survivors, personal representatives and assigns should be bound.

The writing further provided that the syndicate managers might become subscribers to the syndicate and that the syndicate should terminate one year from the agreement, unless the syndicate managers should extend the duration for an additional period not to exceed three years.

To this agreement the defendant became a party by subscribing for 300 shares of the stock, paying thereon, as required by the agreement, $7,500 in cash.

Thereafter, on June 17, 1912, the syndicate managers made another agreement in writing with the plaintiffs Jenks and Frothingham, who were therein designated as trustees for certain parties who were about to become contributors to a loan, these parties being designated in the agreement as "Participants." This agreement recited that the syndicate managers, pursuant to the agreement of June 4, borrowed from these trustees the sum of 75 per cent par value of the

stock of the Plantations Company. The whole amount of said loan being $225,000, said trustees issued certificates of participation in this loan to the various parties who contributed to the loan, and as a part of the same transaction the syndicate managers gave to the trustees their promissory note for $225,000 payable on or, at the option of the syndicate managers, before December 17, 1912, with interest at 7 per cent per annum, and with the privilege on the part of the managers to renew the note upon payment of interest for a further period not to exceed six months.

The agreement of June 17 provided that if the syndicate managers should make default in the payment of the note at maturity, or interest thereon, the trustees might enforce payment of the loan by proceeding to collect the balance of their underwritings from the subscribers to the syndicate, by a sale of the collateral or otherwise, reserving all the rights of ownership thereof, and after defraying all costs, charges and expenses connected with the trust, pay off the owners of these certificates of participation.

The declaration in this case set up these agreements of June 4 and 17, 1912, *in hæc verba*. To this declaration the common counts were attached, and the declaration averred, and the proof established beyond doubt, that defendant never paid the balance of his subscription. Certain dividends on the stock were received by the trustees, and defendant's share of such dividends has been applied on his indebtedness.

It would appear that if the plaintiffs have a right to recover at all, the amount for which the verdict was directed and judgment entered was correct.

To the declaration the defendant filed a plea of the general issue, a plea that the writing of June 4, 1912, was obtained from the defendant by fraud and circumvention, a plea that the indebtedness incurred by the syndicate had been paid in full, and a plea that the plaintiffs "are not and never have been the assignees

and equitable and bona fide owners of the syndicate agreement, dated June 4, 1912, and that they did not acquire title thereto.'' There was also a plea alleging fraud in that the Plantations Company was known to be insolvent at the time the syndicate agreement was made. After replications had been filed to these pleas, an additional plea was filed by leave, which alleged a conspiracy to sell to the Plantations Company certain property, choses in action, etc., of certain other corporations controlled by George E. Shaw; that these assets were worthless, and that, as a matter of fact, the stock of the Plantations Company was issued in order to enable certain banks, in which Shaw was interested, to realize on these worthless securities, which were held by these banks as collateral to certain precarious loans theretofore made by them.

At the close of all the evidence the defendant made a motion for an instruction in his favor, which was denied, and after the return of the verdict made motions for a new trial and in arrest of judgment, which were overruled, and these rulings of the court are assigned as error.

While many points are argued based on these assignments, we think these naturally resolve themselves into two controlling questions: First, whether the obligation of the defendant, under the terms of the contract and in view of all the circumstances of the case, is a direct obligation to the trustees, as plaintiffs contend, or a secondary and collateral obligation to the direct obligation of the syndicate managers, as the defendant maintains. Secondly, whether there was any evidence from which the jury might reasonably have found that plaintiffs were guilty of fraud, as alleged in defendant's pleas.

The contentions of the defendant that the contract sued upon is void for want of mutuality; that the declaration is defective because it does not allege facts which show that the plaintiffs had complied with pro-

visions with reference to assignments of causes of action; that the proof is wholly insufficient to establish such assignment; that there can be no recovery under the common counts; that the proof was insufficient because it tended to establish only the partial assignment of the chose in action; that the notes of the syndicate managers evidencing the loan made from the trustees to them should have been offered in evidence and tendered in court; that the evidence and proof were defective in their failure to allege or establish that the condition precedent of a call upon defendant for payment of his subscription of stock had ever been complied with—all these points, argued at great length with numerous citations of authority, cannot, it is apparent, be maintained if by fair construction of the contracts on which the suit is based, the same can be held to mean that each subscribing member of the syndicate by the terms of the agreement constituted the syndicate managers as agents to procure a loan under terms by which the subscriber became directly liable to the lenders for the amount of his unpaid subscription.

We are constrained to hold, after a consideration of the cases cited pro and con, that the effect of the whole transaction was to create such a direct obligation from the defendant to the trustees for the lenders to the amount of his unpaid subscription to the stock.

The second clause of the agreement of June 4, 1912, appoints and constitutes the syndicate managers the agents of the subscribers for the purpose of making this loan, and while it provides that the loan may be secured by assigning as collateral thereto the stock and the agreement and the subscriptions, the use of the term "collateral" clearly indicates that there must have been in contemplation an independent obligation to which the rights acquired under the note of the syndicate managers, the agreement, the stock, etc., were purely secondary.

The facts and rules of law applicable are, we think, analogous to those in *Knickerbocker Trust Co. v. Evans*, 188 Fed. 549, and *Union Trust Co. v. Van Schaick*, 156 N. Y. App. Div. 769, 141 N. Y. Supp. 945. We think, further, that the defendant is, under the undisputed facts, liable to the trustees as for money paid, laid out, expended and advanced by the plaintiffs to the defendant at his special instance and request. It is true that the lender or lenders, at the time of the execution of the first contract, had not been identified, but that contract in effect was a promise by defendant to any lender who might thereafter be found and identified. That a defendant may be liable in such a case is established by *McClure v. Wilson*, 43 Ill. 356, where prior cases in this State are discussed. While it is true by the rules of law, independent of the statute, the assignee of a chose in action may not sue thereon in his own name, there seems to be a well-recognized and definite exception to that rule stated to be "that where a chose in action has been assigned, if the debtor, expressly or impliedly, recognizes the right of the assignee, he comes under an implied promise to pay the assignee, upon which the latter may maintain a suit in his own name." Such was the decision of the Supreme Court of Virginia in *Vanderwerken v. Glenn*, 85 Va. 9, citing as authority *Tiernan v. Jackson*, 5 Pet. (U. S.) 597.

The defendant, however, says these cases are not applicable, and states: "An examination of the agreement involved in each of these cases reveals the fact that the defendant in each case expressly contracted with the plaintiffs, thereby clearly distinguishing them from the case at bar, where the defendant's contingent obligation was given to plaintiff as collateral." We do not think that these agreements in these several cases can be so distinguished from the contract herein sued on, in which the subscribers (of whom the defendant was one) expressly recognized the rights of

the lenders by the provision in the last clause of article 2 thereof, to the effect that "in the event that this agreement and the subscriptions hereunder are thus assigned, each subscriber expressly waives for the benefit of the lender any defense to the payment of his subscriptions, or any part thereof, that he may at any time have, at law or in equity, as between himself and the syndicate managers."

It follows, then, that the obligation of the defendant is primary and direct, not secondary and collateral.

It remains only to consider whether there was sufficient evidence adduced under the two pleas alleging fraud to require the submission of that issue to the jury.

One of the pleas set forth that prior to June 4, 1912, the Plantations Company was insolvent and that Frothingham, one of the trustees, knew of that fact. There is absolutely no proof in the record that the corporation was insolvent on that date or prior thereto, nor is there proof of the other allegation in the plea that Frothingham had any knowledge of Shaw's alleged misrepresentations to the defendant in that respect.

The second plea of fraud omits this charge of insolvency of the Plantations Company, but charges that there was a conspiracy between Shaw and the Girard National Bank, one of the lenders, to defraud the Plantations Company by selling worthless assets to it, in which the Girard National Bank was interested. If the facts as alleged in this plea had been sustained by the proofs, it would be difficult to see how it would have established any defense as against these trustees of the lenders, who had parted with their money on the faith of the syndicate agreement of June 4, 1912, without notice of any defect or defense and which contained a specific clause to the effect that all such defenses were waived for the benefit of the lenders. Jones on Pledges (2nd Ed.) sec. 56; Colebrook on Col-

lateral (2nd Ed.) p. 730; *McCarthy v. Crawford,* 238 Ill. 38; *Knickerbocker Trust Co. v. Evans, supra.*

It is elementary that fraud is never presumed, but must be established by evidence. While we do not find evidence tending to sustain the material averments of this plea, nevertheless even had there been such evidence, it seems to us it could not have availed the defendant for the reason that it would have tended to show a wrong, not primarily to the defendant Harris, but to the Plantations Company, which, in such case, would have been the party defrauded. If in truth and fact there was any fraud, as alleged, the right of action would be in the Plantations Company, not in the defendant Harris; and he could not avail himself of that defense. *Converse v. United Shoe Machinery Co.,* 185 Mass. 422; *Niles v. New York Cent. & H. River R. Co.,* 176 N. Y. 119; *Oliphant v. Woodburn Coal & Mining Co.,* 63 Iowa 332.

We think the court did not err in directing the verdict for the amount of the judgment nor in entering judgment on the verdict, and the judgment is therefore affirmed.

*Affirmed.*

McSURELY, P. J., and DEVER, J., concur.