Syllabus.    Statement of the case.

# The Cincinnati, La Fayette & Chicago Railroad Co.

## *v.*

# The Danville & Vincennes Railway Co.

1. CORPORATION — *when de facto.* Where there was a law author-izing the formation of railroad companies, under which articles of associa-tion were prepared and filed with the Secretary of State, who issued the certificate provided for, and there was an *user* of the franchise purporting to be invested with the association, and the road was built and used under this authority: *Held,* that the association became a *de facto* corporation, and neither the eligibility of the directors nor the rightfulness of the exist-ence of the corporation could be questioned collaterally in a suit by the company.

2. INJUNCTION — *to prevent taking possession under fraudulent legal proceedings.* Where one railroad company instituted proceedings to con-demn and take for its road the road and track of another *de facto* railroad company, but concealed the object and purpose, and gave the latter com-pany no notice, and the whole proceeding showed it was but the carrying out of a scheme for the fraudulent and inequitable purpose of getting possession of such company's right of way and road without making com-pensation: *Held,* that a court of equity would restrain the taking of pos-session under such fraudulent proceedings.

3. RIGHT OF WAY — *description of property in proceedings.* One railway company cannot condemn the right of way of another *de facto* company which is in the undisputed and quiet possession of its road, and operating its trains over the same, for even a qualified or conjoint use, without describing it in the petition as such right of way, and alleging inability to agree as to compensation. The describing of the tracts of land simply over which such prior way is located, making no reference to the other road or company, will not authorize the condemnation of such prior right of way.

APPEAL from the Circuit Court of Iroquois county; the Hon. CHARLES H. WOOD, Judge, presiding.

This was a bill for an injunction, filed by the appellant against the appellee, to restrain the latter taking possession of the railroad and right of way of the complainant under certain fraudulent proceedings for the condemnation of the same.

Messrs. INGERSOLL, PUTERBAUGH BROS. & McCUNE, for the appellant.

15—75TH ILL.

Mr. HENRY CRAWFORD, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

In the year 1871, certain persons, purporting to be twenty-five in number, proceeded to organize themselves, under the general railroad law of 1849, into the appellant corporation, for the purpose of supplying a portion in this State of what was necessary to constitute a complete line of railway between the cities of Cincinnati, Ohio, and Chicago, in this State. The amount of stock was fixed, was subscribed, and paid; directors were elected, articles of association prepared, subscribed, certified and filed with the Secretary of State, and the usual certificate given by that officer.

The portion of the line to be constructed was from a point on the line between this State and Indiana, about three miles south-east of Sheldon, in Iroquois county, thence running north-easterly through that county and a portion of Kankakee county to the village of St. Anne.

Appellant did not assume to exercise the right of eminent domain, but obtained the right of way, so far as it was obtained, by purchase or contract. It located its road between the points stated, and, by about the middle of December, 1871, had it constructed, so that about the 1st of May, 1872, the through line, including the portion in question, was opened for public use as a railroad, and appellant has not only been in the exercise of its functions and franchises as a railroad corporation, but the same has been open, public, and notorious. In November, 1872, this company re-organized under the general railroad act of this State, which went into force March 1, 1872.

It appears also that about the 13th of November, 1872, the appellee was organized under the last-mentioned act, as a railroad corporation, to construct a road, in part at least, upon a route similar to that of appellant. On the 22d of November, 1872, appellee, having caused a survey of its line and a plat to be made, presented a petition to the county court of Iroquois county for the purpose, ostensibly, of condemning land through

that county for its right of way. Numerous tracts and parcels are described and the names of owners or pretended owners given. Appellant is not named or described in the petition. Nor was any notice to appellant given or contemplated. Such proceedings were had upon this petition, that a jury was summoned to ascertain the compensation. About this time, appellant discovered that although it was in the actual possession and use of the right of way, before mentioned, as a common carrier, and this fact must have been known to the agents and attorneys of appellee, yet the land which appellee was about to have condemned was, in fact, the very right of way of which appellant was in the actual and open possession for public purposes, and to this circumstance there was not the remotest allusion in appellee's petition. It appearing that there was no necessity or even plausible excuse for thus interfering with appellant's right of way, then, in view of the circumstance of appellant's open and notorious possession of it, and the studious exclusion of all these facts from appellee's petition, and the failure to make appellant a party, with notice, the inference is irresistible, that this proceeding in the county court was designed for the fraudulent purpose of surreptitiously gaining possession of appellant's right of way. The actors in the formation of the scheme, as would seem from their positions in argument on this appeal, reasoned in this wise : "Now, there are defects in the organization of the Cincinnati, La Fayette & Chicago Railroad Company ; they have made a slip in some particulars, and if we can so manage as to get a condemnation proceeding through the court without notice to that company, and thereby get into possession, we can then assail their organization, convince the court that they can have no standing in court on account of those defects, and thus keep that possession, no matter how acquired." That is the very argument they urge here to sustain the decree of the court below dismissing appellant's bill to restrain them from thus obtaining possession, on the ground of fraud and want of jurisdiction in the proceedings to condemn. It is apparent from the face of those proceedings, when considered

with the surrounding circumstances, that the former, though ostensibly for the ordinary purpose of condemning land not appropriated to railroad uses, ·for appellee's right of way, were, in reality, but in the execution of a scheme devised for the fraudulent and inequitable purpose of getting possession of appellant's right of way without making compensation, and then, to seize upon alleged defects in appellant's organization, as a means of retaining it against justice and right. The morality of the act is supported by the same reasoning which would be resorted to in justification of a contemplated theft from one *non compos mentis*, " He is incapable of appearing in court to vindicate his rights."

An elaborate printed argument has been presented by appellee's counsel to show that appellant was not rightfully organized, and that therefore it could acquire no right of way, and especially that it can have no standing in court in its claim for protection against this contemplated invasion of its possession. He says the act of 1849 was repealed by the constitution of 1870.

There is, in our opinion, no basis for the position that the sections of the act of 1849, so far as they provide for the formation of such corporations, are abrogated by the constitution. They are not inconsistent with any of its provisions. Then, there being such a law authorizing the formation of railroad corporations, and articles of association having been prepared and filed with the secretary of state, and he having given the certificate provided for, and there having been a user of the franchises purporting to be invested in the association, the latter became a *de facto* corporation, and under the settled law of this court neither the eligibility of the directors nor the rightfulness of the existence of the corporation could be inquired into collaterally in this suit. *Tarbell* v. *Page*, 24 Ill. 46 ; *Mitchell et al.* v. *Deeds*, 49 ib. 416 ; *Thompson* v. *Candor*, 60 ib. 244.

In *Mitchell* v. *Deeds*, before cited, the court, page 422, said : " The law is well settled in this State, that, under the plea of *nul tiel corporation*, the plaintiff need only show an organization in fact and a user of corporate franchises."

So, by parity of reasoning, such organization in fact, and user, are all that is necessary to maintain a bill in equity against a mere stranger seeking to interfere with the property of such *de facto* corporation. Here, it was indisputably shown that there was such an organization in fact, followed by user of corporate franchises. That was sufficient. So, also, was it shown that the directors were elected under color of authority and were acting as such. They were, therefore, *de facto* officers of the corporation. Their title to the office could not be brought in question and decided collaterally in this suit. *Lawson et al.* v. *Kolbenson et al.* 61 Ill. 418, and authorities there cited.

Appellee had authority to exercise the right of eminent domain, but, by the statute prescribing the mode of its exercise, it could not have appellant's right of way condemned for even a qualified or conjoint use, without describing it in the petition as such right of way, and alleging inability to agree as to compensation. This proceeding, which might perhaps have been lawful and proper but for circumstances which were studiously concealed, was for an inequitable purpose. It was designed and carried forward for the purpose of getting possession of a right of way of which appellant was in the quiet possession as owner, without making appellant a party or paying to it any compensation. No other object was intended by, and no other result could follow, the carrying the proceeding through to a finality. It was, in this view, a proper case for an injunction. In *Goodenough* v. *Sheppard*, 28 Ill. 81, it was held that a person in the quiet possession of real estate as owner may obtain an injunction to restrain others from dispossessing him by means of process growing out of litigation to which he was not a party. It does not lie with appellee to say, in justification of this inequitable proceeding, that appellant was not so far rightfully organized or authorized to construct the railroad in question as to be capable of holding lands for the purposes of a right of way. That is a question solely between appellant and the persons from whom title was obtained, or between appellant and

the people of the State, when proper proceedings shall arise to require its decision.

It is obvious, from the record, that the court below made inquisition into the rightfulness of appellant's corporate existence, and dismissed the bill for defects in its organization. This was error. The decree will be reversed, and cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*