## Chicago General Railway Co. et al. v. The Chicago City Railway Co.

1. CORPORATIONS—*Powers of General Solicitor.*—The general solicitor of a corporation is not presumed to have authority to make agreements for it, save in matters belonging to his department.

2. STATUTES—*Making Irrevocable Grants.*—No law, making irrevocable grants of special privileges or immunities, can, under our constitution, be passed.

3. RAILROADS—*Are Public Highways.*—By the constitution of this State, all railways are declared to be public highways and free for all persons for the transportation of their persons and property thereon under such regulations as may be prescribed by law.

4. ORDINANCES—*Laws Within the Meaning of the Constitution.*—The ordinance of 1887, of the city of Chicago, by which the Chicago City Railway Company acquired its right to lay down and operate a street railroad in 22d street, is a law within the meaning of Section 14, of Article II, of the Constitution.

5. PUBLIC STREETS—*Held in Trust.*—The public streets of a city are held in trust by the city for the use of the public, and as streets they can be lawfully contracted or given away for private uses.

6. STREET RAILWAYS—*Right to use Public Streets.*—The right of a street railway to lay tracks in the public streets of a city, and run its cars thereon, is given and exists, solely because of the undertaking and duty of such company to serve the public.

7. SAME—*No Right to Monopolize the Street.*—A street railway company can not maintain its tracks in a public street for the purpose of holding its right to such street or for the purpose of keeping the public, either through another company, or in any other way, from using the street in a manner that shall serve the public convenience.

8. SAME—*Nature of the Right to use Streets.*—It is the duty of a street railway company to use, for the benefit of the public, all the rights given to it, to lay tracks in public streets, and to afford the public all reasonable and proper facilities in the way of travel over each and every part of its tracks; to do otherwise, or to stand as a hindrance to the accommodation of the public is a gross perversion of the privileges accorded by the municipal authorities to such company.

9. SAME—*Right to use Streets a Property Right.*—The right in consideration of services rendered the public, to lay tracks in a public street and to operate cars thereon is a property right and held under certain conditions; it may be forfeited, but it can not, either in whole or in part, be, by the mere will of a legislative body taken from its owners, either for public or private use.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

## STATEMENT OF THE CASE.

This is an appeal from the decree of the Circuit Court dismissing the bill of complaint of appellants for want of equity. The bill alleges the organization of the West & South Towns Company (called the Towns Company), August 7, 1891, under the General Incorporation Act (R. S., Chap. 32) and the Horse and Dummy Act (R. S., Chap. 66); that its object was the construction and operation of a street railway on all streets and alleys within the present or future limits of the city of Chicago, on which it might receive authority from the city council, and particularly for the construction and operation of a street railway on 22d street in said city from Lawndale on the west to Lake Michigan on the east. That the Chicago General Railway Company (called the General company) was incorporated October 21, 1893, under the general railway laws of Illinois, to construct, acquire, purchase, lease,

maintain and operate railways or portions thereof along the lines described in its articles of incorporation, one of which was upon 22d street, between Lawndale and Lake Michigan. The bill alleges the passage by the city council of the city of Chicago, on February 8, 1892, of an ordinance granting to the Towns company, its successors and assigns, permission to construct, maintain and operate a street railway on 22d street from the east line of Grove street to the west line of Johnson street, and across all connecting, abutting and intersecting streets, avenues, courts, alleys, places and highways, and also in and along certain other streets, not now in question.

That said ordinance further provided that said company shall have the right to connect its tracks with those of the Chicago City Railway Company (the defendant herein, and hereafter called the City company), on 22d street at or near Grove street, but should have no right to construct any tracks east of the Chicago river on said street without the consent in writing of the City company.

It also provided that said company shall have a right to operate its cars over tracks now owned by it upon such terms and conditions, by lease or contract, as may be agreed upon between the companies owning said tracks, or otherwise, not in conflict with any of the conditions of said ordinances, or the general ordinances of said city.

The bill alleges that about June 24, 1893, said line of railway on 22d street was put in actual operation; that since about July 22, 1894, said line of railway and its branches have been in full and continuous action on 22d street and other streets from the western terminals to Jefferson street and near the south branch of the Chicago river, to the great advantage and convenience of more than two hundred thousand of the people of the city residing and engaged in business along 22d street and its vicinity.

The bill alleges that on April 3, 1893, the Chicago General company lawfully acquired by lease from the other company, the Towns company, all its railway, including the line on 22d street, to be operated by the General com-

pany as fully and completely as might have been done by
the Towns company; that thereupon the General company
entered into possession of the same and ever since has been,
and still is, engaged in the actual operation of the same, in
conformity with the ordinances of the city of Chicago, and
in full discharge of the duties and obligations imposed upon
said companies.

The bill alleges that the defendant company, the Chicago
City Railway Company, is a corporation organized under
an act entitled "An act to promote the construction of
horse railways in the city of Chicago," approved February
14, 1859; that on February 25, 1887, the city council passed
an ordinance granting the City company authority to con-
struct, maintain and operate a double track street railway
in said 22d street, from the center of State street to the
south branch of the Chicago river; that section 4 of that
ordinance requires the City company to fill, grade, pave and
keep in repair sixteen feet in the center of said street; that
said City company thereupon constructed a double track
street railway along 22d street, in the center of said street,
to the south branch of the Chicago river, and put the same in
operation by running a single car to and fro along said street
between said limits; but that said City company has not in
anywise fully or adequately performed or discharged its
duty to furnish proper transporation to passengers who de-
sire to travel along said 22d street between said limits, but
has only occupied said street and operated said railway
thereon so far as became necessary for the purpose of hold-
ing possession of the same.

Complainants allege that there are great numbers of in-
habitants of that part of the city of Chicago, through which
the lines of railway owned and operated by complainants as
aforesaid are built, and which is supplied with transporta-
tion facilities by complainants, who desired, and still desire,
to be carried along said 22d street line of railway, not
only to said Jefferson street and the south branch of
the river, but into the South Division of the city lying east
of said south branch, and to said Grove street and to said

State street, and eastwardly thereof; and that complainants, in pursuance of the authority granted by the ordinance in their behalf, and to discharge their duty as carriers through the territory through which they had the right to operate as aforesaid, proceeded to make such arrangements as would secure to the passengers upon their said line, the transportation eastward above described. That the bridge over the said south branch of the Chicago river and the approaches thereto, and the iron railway rails laid on the east approach of said bridge, were then in such condition that they required reconstruction, and would not support or bear the service required by the operation of the cars over the same, as proposed; that it was necessary to reconstruct and repair the same, which was accordingly done, as hereinater stated.

Complainants allege that they made an arrangement with the City Ry. Co. for the use by them, complainants, of the tracks of said City Ry. Co. from Grove street to the Chicago river, and that in reliance upon such arrangement, they, in pursuance thereof, with the knowledge and acquiescence of said City railway company, expended $2,000 in reconstructing said bridge and the approaches thereto.

That the City company, by its consent to and its acquiescence and participation in said construction and repair, became barred and precluded from any subsequent opposition thereto or interference with the rights of complainants under the same, and became and is estopped to question the right of complainants to operate their cars along said street in accordance with the authority granted by said ordinance to said complainant.

The bill alleges that the natural result and effect of the extension of complainant's line to said Grove street, would be to increase the number of passengers seeking passage on the City railway company's line, and would afford ample compensation to the City railway company for the use, by complainants, of the rails laid by the City company between Grove street and the said bridge, but complainants do not admit any right of compensation in the city company for any such use, inasmuch as the city company has not and

can not have, under the constitution and laws of this State, and the ordinance of the city of Chicago, any exclusive right to said street, or any part thereof, but the same is and must be, at all times, free to the public, subject to such regulations as the public authorities may from time to time prescribe. That no exclusive right in any public street can be obtained for any railway company; that such companies must conduct their business in such a manner as not to seriously interfere with or exclude the general public therefrom; that the general assembly has delegated to the city of Chicago the power to regulate the use of streets in said city, and to regulate the traffic thereon and the laying of tracks therein; that such ordinances in favor of complainants are such lawful regulations of the matters, aforesaid; and that complainants were thereby duly authorized to connect their tracks with those of the City company, and to operate their cars over said tracks laid down upon said street, as aforesaid, between said limits, without unnecessary interference with said company, subject to limitation that no more than five cents shall be charged for one continuous ride for any distance within the city limits.

The bill further alleges that about April 4, 1895, complainants, having first given notice of there intention so to do, undertook to run one of their cars from said Jefferson street to said Grove street along their tracks and across said bridge and approaches thereto, reconstructed as aforesaid, at the expense of complainants, and the defendants then and there had notice and knowledge that such would be done. That the west approach to said 22d street bridge begins at Jefferson street and extends about 300 feet easterly to said bridge; that said bridge extends therefrom about 200 feet further, and said easterly approach to said bridge extends from said bridge easterly to Grove street, a further distance of 300 feet, making a total of about 800 feet; that the east line of Grove street (the terminal of complainant's line under said original ordinance), is about 3,400 feet west of State street, and complainants have in operation for the transportation of passengers to the said eastern terminus of their line on 22d street, about sixteen miles of railway track.

The bill alleges that on April 4, 1895, complainants took their car, with many guests and persons interested in said line thereon, and a number of passengers; that said car proceeded under the direction of complainant's superintendent easterly from Jefferson street along said 22d street upon the rails laid by complainants, as aforesaid, across the western approach to said bridge, and across said bridge; that when said car came upon said bridge, the Chicago City company had organized and had a force of about 300 men east of said bridge, along said 22d street, for the purpose of preventing complainants from moving said car from said bridge to Grove street; and that said City company obstructed said 22d street by placing upon the same and across the tracks at Grove street, a car, without any means of moving the same, and two wagons loaded, each, with about two tons of iron; and to render the removal of said wagons impracticable, had removed one wheel from each of the wagons, and taken away therefrom the horses; and had also placed upon said street their wrecking wagons, with crews of men with axes, crowbars, hoisting jacks, sledge hammers, cables and other instruments; that while complainant's said car was still upon the bridge, defendant's superintendent, Bowen, commanded said car to stop; and when said car was started forward, and while it was still more than 100 feet west of Grove street, and clearly within the limits within which complainants had been expressly authorized to operate their cars, the Chicago City company, by their superintendent and employes, with force and arms, attacked the car and persons in charge thereof, and overthrew and broke up and destroyed the car. And said City company, by its said superintendent, while destroying said car, threatened in like manner to destroy and break up any other car which complainants might attempt to operate east of said bridge.

The bill alleges that complainants are operating cars upon their lines of railway at said bridge at intervals of about eight minutes, and many thousands of persons are transported along said lines of railway, many of whom desire to be transported over said bridge and along said 22d street.

Chicago Gen. Ry. Co. v. Chicago City Ry. Co.

The bill sets up the facts showing that said obstruction of said street and the prevention of said complainants' operating its line of railway over the same and the destruction of its cars, as threatened and intended by the City company, would inflict an irreparable wrong upon complainants. The bill also sets up that if complainants should continue the business for which they have been incorporated, and should run their cars to Grove street, as they are authorized to do, the City company would carry into effect its threats and destroy any and all other cars of complainants which would run upon said eastern approach across said bridge to Grove street, and all other cars of complainants would be destroyed, which would give rise to a great multiplicity of suits in which complainants could obtain no substantial or adequate redress; and that the operation of complainant's railway, both as to the short line of track east of the bridge and the sixteen miles west of the bridge would be paralyzed by such destruction, and the franchises, licenses and privileges of complainants would be put in great peril, and complainants irreparably injured and damaged.

The bill alleges that the defendant has constructed about 380 miles of track, and employs several thousand persons, and has the physical power and means in its hands, if permitted to use the same, of preventing by force the operation of any other line of railway in the streets.

That complainants have the right, under the ordinances, to use electric power to said Grove street, and have obtained a permit from the city to erect poles and wires in said 22d street, between Jefferson street and Grove street; but unless prevented by injunction, the City company would prevent the erection thereof when attempted by complainants, and would, with force and arms, break up and destroy the same as in the aforesaid instance.

The bill prays that it may be decreed that complainants have a full and perfect right to operate said cars along said 22d street, from Jefferson street to Grove street, without interference, prevention, hindrance or obstruction by defendant, its officers or employes or confederates, and for a

temporary injunction, and that upon the hearing the injunction may be made perpetual, and for such other and further relief as by good conscience and equity they are entitled; the complainants submitting on their part to do what is equity in the premises.

The answer of the defendant, the City company, admits the organization of complainants; and that the complainant, the General company, on April 3, 1894, acquired by lease from said Towns company, all of said railway of said Towns company, and entered into possession and operation of the same as alleged in said bill, and has ever since been and still is engaged in the operation of the same; that since about July 22, 1894, the lines of said railway in 22d street west of said bridge and its lines have been operated by the General company; also admits its own incorporation, and the passage of the ordinance of February 25, 1887, authorizing the defendant to lay down and operate its railway in 22d street, from State street to the south branch of the Chicago river; and that it runs a double track street railway in 22d street, from State street to the bridge, as alleged in the bill; but denies that it has not fully and adequately performed its duty in operating said railway, or that it has only occupied the street and operated its railway thereon so far as is necessary to hold possession of same, and alleges that it has maintained as full and adequate service upon said line as the proper accommodation of passengers in the use of the same justified or required. Denies any understanding or agreement between the parties that the tracks of complainants should be connected with the tracks of defendant at any point near Grove street where the east approach of the bridge connected with the bridge, or at any other point; or that the expense of reconstructing the tracks on the east approach should be borne by the defendant, or that complainants have, in accordance with any understanding or agreement, caused materials to be furnished and work done to reconstruct said east approach for the relaying of tracks and making the connection. Denies any understanding or agreement with complainants for connection of tracks or reconstruction of

any kind whatsoever, or that any work was done in pursuance of an agreement between them. Denies any notice or knowledge of the plans or purposes of complainants in respect to the improvement of the tracks in 22d street east of the bridge, or that defendant ever co-operated with complainants with respect thereto, or that there was any agreement, expressed or implied, that complainants should have the right to operate their cars along the tracks in any part of 22d street east of the bridge; or that defendant is estopped, as alleged in the bill, or that the effect of the extension and operation of complainants' line east of the bridge to Grove street would be to increase the number of passengers on defendant's line to such an extent as will afford compensation to the defendant for the use by complainants of its tracks on the east approach. Denies that complainants have any right under the constitution, as alleged in the bill, or that the complainants are authorized by the ordinances to connect said tracks without the consent in writing of the defendant; denies that it has given any consent.

The answer admits that defendant has refused to permit complainant to run any cars over the tracks in 22d street east of the bridge; and that it has, by force, prevented such use of its tracks by complainants, as it lawfully might do. And avers that it has the lawful right to retain and keep possession of its said tracks and prevent the unlawful use thereof by complainant.

Avers that since the making of such lease by the Towns company, April 3, 1894, it has not been engaged in the operation of any railway or run any cars, and is not in possession, or entitled to the possession, of any tracks, and has no connection with or necessity for using any tracks nor any joint ground for uniting the tracks owned by it with tracks of defendant. Denies that any right or privilege granted by section 13 of the ordinance of February 8, 1892, has been transferred to the other company, the General company; denies the validity of the lease from the Towns company to the General company, for the reason that any rights attempted to be conferred by said ordinances were not ca.

pable of transfer; and denies that the General company has acquired any right whatsoever, under section 13 of this ordinance of February 8, 1892.

In answer to the averments of the bill of agreement between the complainants and defendant, defendant sets up the statute of frauds; that the defendant has never made any promise or given any memorandum thereof in writing, and claims the benefits of the statute. And denies that complainants, or either of them, are entitled to the relief prayed.

JOHN S. MILLER and MERRITT STARR, attorneys for appellants.

It is settled in Illinois that the only reason why a railroad can be permitted upon the public streets, is, that it is one of the proper methods of public travel in trust for which the streets are held; that the interest of the street railway company is a part of the easement of the public in the street, and only a form of the exercise by the public of its right of passage. Moses v. Pittsburg, etc., Co., 21 Ill. 516; Stack v. City of E. St. Louis, 85 Ill. 377; Chicago Dock Co. v. Garrity, 115 Ill. 155; Olney v. Wharf, 115 Ill. 523; Chicago, B. & Q. R. R. v. West Chi. St. R. R. Co., 40 N. E. Rep. 1013; Ligare v. City of Chicago, 139 Ill. 146.

A street is made for the passage of persons and property and the law can not define what exclusive means of transportation and passage shall be used. Moses v. Pittsburg, etc., Co., 21 Ill. 516.

But this authority can only be granted to a railroad company when the use authorized is a proper use of the street for the purpose of travel and is consistent with, and in no way exclusive of, the other proper uses of the street for the purposes of public travel. Ligare v. Chicago, 139 Ill. 46; Pittsburg, etc., Co. v. Reich, 101 Ill. 157; Dubash v. H. & St. Joe R. R., 89 Mo. 86, and L. C. R. Co. v. City of Louisville, 8 Bush 415.

The interest of the street railway company, although a valuable one, is a part of the easement of the public in the

street. It is carved out of such easement. It is accessory and auxiliary to the existing right, vested in the public, of passing over the street. The propelling of street cars (over the crossing) was only a form of the exercise by the public of its right of passage, and therefore did not operate as any infringement upon the rights of plaintiff in error, or entitle it to any additional compensation. Chicago, B. & Q. R. R. Co. v. West Chi. St. R. R. Co., 40 N. E. Rep. 13.

The right of defendant under the ordinance of February 25, 1887, is not exclusive. Rev. Stat. Ill. Ch., Sec. 4; Jackson Co. Company v. Interstate Co., 24 Fed. Rep. 306; 2 Dillon Mun. Corp., Sec. 797; Canal & C. St. Ry. v. Crescent C. Ry., 41 La. Ann. 561; N. O. City Ry. v. Crescent C. Ry., 44 La. Ann. 728, 748; Louisville Ry. v. St. Louis R. R., 87 Ky., 223; Birmingham, etc., Ry. v. Birmingham St. Ry., 79 Ala. 465; C., B. & Q. R. R. v. West Chi. St. R. R., 40 N. E. Rep. 1008.

It is settled that the ordinance of 1887, by which appellee acquired its right to lay down and operate its street railroad in the portion of 22d street in question, is a law within the meaning of section 14 of article 2 of the constitution. Mason v. Shawneetown, 77 Ill. 533; City of Chicago v. McCoy, 136 Ill. 344, 351; Hayes v. Mich. C. R. R., 111 U. S. 228, 237.

It is equally clear that the rights given thereby to appellee to lay down, maintain and operate its railroad is, as it is claimed and asserted by appellee, a "special privilege," within the meaning of this provision. Birmingham St. Ry. Case, 79 Ala. 365.

Counsel contended that by this provision of the constitution it was intended that all the power should be reserved which is contained in any of the classes of statutes of incorporations reserving the right to repeal or modify charters.

But where such a power is reserved, it is well settled that the legislative power can authorize one street railway company to use the tracks of another company without condemnation, and that the prior company is not entitled to have the right condemned and the compensation first ascer-

tained by a jury. Metrop. R. R. Co. v. Highland St. R. R. Co., 118 Mass. 290; Metrop. R. R. v. Quincy R. R., 12 Allen 262; Birmingham St. Ry. Case, 79 Ala. 465; Covington St. R. R. v. Covington & C. St. Ry., 19 Am. L. Reg. U. S.), 765; St. Louis Ry. v. Southern Ry., 15 S. W. Rep. 1013; Union Depot Ry. v. Southern Ry., 105 Mo. 562.

The principle is well settled that the powers of providing streets and highways and for the convenience of the public travel thereon are important governmental police duties. See Chicago & N. W. R. R. v. City of Chicago, 140 Ill. 309; Ill. Chicago R. R. v. Willenborg, 117 Ill. 203; Chicago, B. & Q. R. R. v. Att'y Gen., per Dillon, J., 9 Western Jur. 347

In Lake Shore & M. S. Ry. v. C. & W. 1. R. R. Co., 97 Ill· 516, the court, speaking of railways, says:

"In so far as such property is to be regarded as public property, or devoted to a public use, the general assembly may consent, in behalf of the public, that the character of the use may be changed."

In Chicago, B. & Q. R. R. v. Att'y Gen., 9 Western Jur. 347, Judge Dillon said:

"In all civilized countries the duty of preserving safe and convenient highways to facilitate trade and communication between different parts of the State or community is considered a governmental duty. This may be done by the government directly, or through the agency of corporations created for that purpose. The right of public supervision and control over public highways results from the power and duty of providing and preserving them. Over the railway, as a highway, and in all its public relations, the State, by virtue of its general legislative powers, has supervision and control; and over the rights of the shareholders, so far as these are private property, the State has the same power, and no greater than over other private property."

In Illinois Central R. R. Co. v. Willenborg, 117 Ill. 208, the court, speaking of the legislative police power over railroads, says:

"All property devoted to public uses takes on a nature or qualification *quasi* public, and is for that reason held to

be subject to legislative control in a greater or less degree, and to which the mere private property of the citizen is not subjected. * * * Where property, whether belonging to a natural person or a corporation, becomes 'affected with a public interest, it ceases to be *juris privati* only.' Or where a party devotes his property to the public use, the community at large acquires such a qualified interest as will subject it to legislative control for the common welfare. Accordingly, the property of railroads and other similar corporations transacting business for and with the public, has been subjected to burdens not imposed on owners of mere private property, used purely and exclusively for private interest. The distinctions in this regard have been uniformly observed."

If the public convenience and safety is so promoted by a farm crossing as to make such an imposition upon a railroad of a crossing over its own property a valid exercise of the police power, how much more is this true of the public convenience in travel by street cars along a street of a great city.

Art. XIII, Sec. 5, in defining the policy of the State that highways shall connect with each other, and so fulfill their objects, provides:

" And all railroad companies shall permit connections to be made with their track, so that any such consignee, and any public warehouse, coal bank or coal yard may be reached by the cars on said railroad."

This is imperative. Chicago & A. R. Co. v. Suffern, 129 Ill. 374.

That which is known as the "police power" is "nothing more or less than the powers of government inherent in every sovereignty, that is to say, the power to govern men and things." License Cases, 5 How. 583, per Taney, C. J.; Munn v. Illinois, 94 U. S. 124, 125.

It varies in its extent and scope, not only with the varying occasion or necessity for its exercise, but with the varying subject-matter to which it is applied. It may be applied to the private property of the citizen. But it has a much

wider and more far reaching application to property, which (although owned by an individual or corporation), is devoted by the owner, and to the extent that it is devoted by the owner, to a public use. Therefore, railroads are subject to that power to a much greater degree than the private property of the individual, and for additional reasons. Illinois Central R. R. v. Willenborg, 117 Ill. 208; R. R. Co. v. Commissioners, 79 Me. 394; Chicago & N. W. Ry. v. City of Chicago, 140 Ill.

To the extent that property is *publici juris*, to that extent the public authority can control or direct its use. Munn v. Illinois, 94 U. S. 113, 126; Lake View v. Rosehill Cemetery, 70 Ill. 191, 194.

The ordinances in question relate to "a public subject, within the domain of the general legislative power of the State, and involving the public rights and public welfare of the entire community affected by it."

In all such cases there can be no contract, and no irrepealable law, because they are governmental subjects. They involve public interests and legislative acts concerning them are necessarily public laws. Newton v. Commissioners, 100 U. S. 548.

No proof of an express contract is required. Appellee can not stand by and suffer appellants to expend money on this east approach as a part of appellants' public work, and then stop it by injunction until it is paid. Griffin v. Augusta, etc., Ry. Co., 70 Ga. 164.

And estoppel *in pais* by inducing another to believe in the existence of a state of things which defendant denies, and to change his position by reason thereof, estops the defendant from asserting his claim, and the statute of frauds has no application to defeat this rule. Hill v. Blackwelder, 113 Ill. 283.

The defendant having stood by and seen the improvements made at the expense of the complainants in the assertion of their right and under the obvious expectation that no obstacle would afterward be imposed in the way of their enjoyment, it is now estopped to deny that right.

Goodwin v. Cincinnati & White Water Canal Co., 18 Ohio St. 169; Zabriskie v. Cleveland, Columbus & Cin. R. Co., 64 U. S. 381, ad fin; Little Rock & Napoleon R. Co. v. L. R. & Miss. & Tex. R. Co., 36 Ark. 663; see same case, 4th Am. & Eng. R. R. Cases, 392; Rochdale Canal Co. v. King, 16 Bear 630, 633; 2 Beach on Inj., Sec. 1356.

Equity affords a remedy by injunction to prevent irreparable injury which is threatened, without first establishing the right at law. Mohawk Bridge Co. v. Utica & Schenectady Ry. Co., 6 Paige, 554; Morris Canal Co. v. Central R. Co., 16 N. J. Eq. 482; Ripon v. Hobart, 3 M. & K., 6 Hare, 340; Richmond v. Dubuque R. Co., 33 Ia. 482; Great Western R. Co. v. Birmingham Co., 2 Phila. 597, 603; Gould on Waters, Chap. XIII, Sec. 507, 513; Attorney Genl. v. Forbes, 2 Myl. & Cr. 123; In re Debs, 158 U. S. 582, 600.

The assertion in the answer of the right to do the thing complained of is a sufficient threat. Hext v. Gill, Law Rep. 7 Ch. 699, 711; Port of Mobile v. Louisville R. Co., 84 Ala. 115; 4 So. Rep. 106; St. Louis, A. & T. K. R. Co. v. Belleville, 20 Ill. App. 587.

Where the injury threatened is of a character which can not be easily remedied, and there is no denial that the act charged is contemplated, the injunction should be granted. United States v. Duluth, 7 Dill. 469.

John P. Wilson, attorney for appellee, contended that appellants have no legal right to appropriate the tracks of appellee to their own use for the purpose of operating street passenger cars thereon without the consent of appellee.

(a) Of the rights of appellee in its tracks and franchises in Twenty-second street. Chicago v. Sheldon, 9 Wall. 50; People v. West Division Ry. Co., 118 Ill. 113; City of Quincy v. Bull et al., 106 Ill. 337; Metropolitan City Ry. Co. v. Chicago West Division Ry. Co., 87 Ill. 317; Chicago City Ry. Co. v. The People, 73 Ill. 541; City of Quincy v. Bull, 106 Ill. 337; C. & N. W. Ry. Co. v. Village of Jefferson, 14 Brad. 615; C. & W. I. R. R. Co. v. C., St. L. & P. R. R. Co., 15 Brad. 592; C. & N. W. Ry. Co. v. Village of Jefferson,

14 Brad. 615; Central City Railway Company v. Fort Clark Railway Company, 81 Ill. 524; Dillon on Municipal Corporations, Sec. 727; In re Kerr, 42 Barb. 119; The Sixth Avenue R. Co. v. Kerr, 45 Barb. 138; 1 Redfield on the Law of Railways, 541, Sec. 6; Citizens Coach Company v. Camden Horse Railway Company, 33 N. J. Eq. 267; J. C. & Bergen R. R. Co. v. J. C. & Hob. R. R. Co., 5 C. E. Gr. 66; S. C., 6 C. Gr. 550; Metrop. R. R. Co. v. Quincy R. R. Co., 12 Allen, 262; Railroad Company v. Railroad Company, 36 Ohio State, page 251; Toledo Consolidated Street Railroad Company v. Toledo Electric Street Railway Company, 36 N. E. Rep. 313; Kinsman St. R. Co. v. Broadway & N. St. R. Co., 36 Ohio St. 239; Railroad Company v. Railroad Company, 44 La. Annual, 58; People v. O'Brien, 111 N. Y. 1; Brooklyn Central Railroad Company v. Brooklyn City Railroad Company, 32 Barb. 364; City of Burlington v. The Burlington Street Railway Co., 49 Iowa, 147; North Baltimore Passenger Ry. Company v. North Avenue Railway Co., 75 Md. 245; Jersey City and Bergen Railroad Co. v. Jersey City and Hoboken Horse Railroad Co., 20 N. J. Eq. 61; Gulf City Street Railway Company v. Galveston City Railway Co., 65 Tex. 502; Covington Street Railway v. Covington & Cincinnati Street Railway Co., 19 American Law Register, 765.

(b) Of the claim of right to use appellee's track upon making compensation. Central City Ry. Co. v. Ft. Clark Ry. Co., 81 Ill. 526; Chicago & N. W. Ry. Co. v. C. & E. R. R. Co., 112 Ill. 599; Illinois Central R. R. Co. v. C. B. & N. R. R. Co., 122 Ill. 483; Lake Shore R. R. Co. v. Chicago, etc., 97 Ill. 506.

(c) Of the claim made under Section 14 of Article 2 of the Constitution. The People ex rel. v. Chicago & West Division Railway Company, 118 Ill. 118; City of Quincy v. Bull, 106 Ill. 337; Chicago Municipal Gas Company v. Town of Lake, 130 Ill. 42.

(d) Of the claim under Section 12, Article 11 of the Constitution.

"As to the declaration in the constitution, that railways

are public highways, they are so, as defined by this court in the Central Mil. Tract R. R. Co. v. Rockafellow, 17 Ill. 541. They are not common highways in the sense of public wagon roads, upon which every one may transact his own business with his own means of conveyance, but only in the sense of being compelled to accept of each and all, and take and carry to the extent of their ability." Toledo, P. & W. R. W. Co. v. Pence, 68 Ill. 529.

The constitutional provision referred to, therefore, does not change the law as the same existed prior to its adoption; it only re-enacts what was already the law in this State. Hoyt v. C., B. & Q. R. R. Co., 93 Ill. 601.

Of the claim under the police power. New Orleans Gas Company v. Louisiana Light Co., 115 U. S. 672. A State can no more impair the obligation of a contract by her organic law, than by legislative enactment; for her constitution is a law within the meaning of the contract clause of the national constitution. Railroad Co. v. McClure, 10 Wall. 511; Ohio Life Ins. Co. & T. Co. v. Debolt, 16 How. 416–429; Sedgwick's Stat. & Const. Law, 637. And the obligation of her contracts is as fully protected by that instrument against impairment by legislation as are contracts between individuals exclusively. New Jersey v. Wilson, 7 Cranch. 154; Providence Bank v. Billings, 4 Pet. 514; Greene v. Biddle, 8 Wheat. 1; Woodruff v. Trapnall, 12 Ark. 641; Woolff v. New Orleans, 103 U. S. 353; see also West River Bridge Co. v. Dix, *ubi supra;* Richmond, etc., Railroad Co. v. Louisiana Railroad Co., 13 How. 71–83; Boston Water Power Co. v. Boston & Worcester Railroad, 23 Pick. 360, 393; Boston & Lowell R. R. Co. v. Salem & Lowell R. R. Co., 2 Gray, 1.


Mr. Justice Waterman delivered the opinion of the Court.

Twenty-second street in this city is laid out upon a section line, and is the most important east and west thoroughfare between 12th and 31st streets, a distance of two miles. From the evidence in this case, it substantially appears

that upon 22d street, from Grove street to the east end of the bridge over the south branch of the Chicago river, a distance of 300 feet, the Chicago City Railway Company in 1887 placed a double track. " That on or about the 4th of April, 1895, and for several years prior thereto, said City railway company operated only one car on 22d street, from State street west to a point between Canal and Grove streets; and operated the said car therein only at infrequent and irregular intervals, and did not operate any car upon said east approach to said bridge; that the same was totally unused for the operation of cars;" that after the passage of the ordinance giving to the Towns company a right to operate its cars on 22d street east of the Chicago river, over tracks not owned by it, upon terms to be agreed upon between it and the companies owning such tracks, said Towns company endeavored to come to some understanding with appellee for the use of such tracks from Grove street to the Chicago river, but the Chicago City Railway Company owning the said tracks refused to make any such arrangement. The contention of appellants that the City railway company is by its conduct, and especially by its suffering appellants to expend $2,000 in the repair of the bridge and approaches to the east end of the bridge over the Chicago river, estopped to deny the existence of an arrangement for the use of the 300 feet of track extending west from Grove street, we do not think is sustained by the evidence.

The general solicitor of a corporation is not presumed to have authority to make agreements for it, save in the matters belonging to his department, of which leasing or selling its property is not ordinarily a part.

It also appears that in April, 1895, appellants proceeded to run a car onto the aforesaid tracks of appellee on 22d street between Grove street and the Chicago river; that their intention so to do was generally known and was resisted by appellee. What followed the attempt to use such tracks is told in an affidavit made by John P. Hart, a bridge foreman and inspector of bridges in the employ of the city of Chicago. The affiant states:

" That about 10 o'clock on the morning of April 4, 1895,

he was working in the neighborhood of said 22d street bridge, and was attracted thereto by a great noise and riot in the streets; that he immediately hastened to the east end of said bridge, and there saw a car of the General railway company lying upon its side, with ropes and grappling hooks attached thereto, which were also attached to a wrecking wagon of the City railway company; and affiant saw an immense crowd of men surrounding said car armed with sledge hammers, axes, crow-bars, pick-axes and other instruments of destruction, and engaged in smashing up and destroying the car, which they continued until it was completely destroyed; that they were under the command of a large man and acting under his orders in the work of destroying the car, and worked with great energy and rapidity, so that the entire destruction of the car was accomplished in less than ten minutes after the affiant reached the spot.

Affiant saw L. E. McGann, president of the General company, standing by and surrounded by a large number of citizens, who expressed great indignation at the acts of violence and destruction, and offered to interfere on behalf of the General company and drive the force of men who were destroying its car away, and throw them into the river and teach them not to take the law into their own hands; but said McGann most strenuously exercised himself to repress the citizens who witnessed the said acts of destruction from interfering to stop the same; he used the most strenuous efforts to keep the peace, and but for his efforts to keep the peace the destructive acts of the men who were destroying the car must have resulted in bloodshed."

Appellee alleges in its answer "that it has the lawful right to keep possession of the tracks and prevent the use thereof by complainants by the use of such force as may be necessary to accomplish that end."

The constitution of this State provides that "No * * * law * * * making any irrevocable grant of special privileges or immunities shall be passed;" and that "railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways,

and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law." (Art. 11, Secs. 2, 4, 12.)

The ordinance of 1887, by which appellee acquired its right to lay down and operate its street railroad in the portion of 22d street in question, is a law within the meaning of the constitution. Mason v. Shawneetown, 77 Ill. 533; City of Chicago v. McCoy, 136 Ill. 344, 351; Hayes v. Mich. C. R. R., 111 U. S. 237, 288.

If the time of the court permitted, it would be interesting to enter upon a consideration of the many questions discussed by counsel. It may be conceded that public streets are held in trust by the city for the use of the public, and that as streets they can not be lawfully given or contracted away for mere private use; also that it is the case that the right of appellee to lay tracks in and thereon run cars through the streets of the city, was given and exists solely because of appellee's undertaking and duty to serve the public; and that it can not maintain its tracks for all or any portion of a public street for no other purpose than to hold a right to the street, or for the object of keeping the public, either through another company, or in another way, from using the street in a manner that shall serve the public convenience. It is the duty of appellee to use, for the benefit of the public, all the rights granted to it to lay tracks in the public streets, and to afford the public all reasonable and proper facilities in the way of travel over each and every part of its tracks; to do otherwise, to stand in this regard as a hindrance to the accommodation of the public, is a gross perversion of the privileges accorded by the municipal authorities to appellee.

But it does not follow that if appellee has done this, or if it has taken the law into its own hands, and with a great force of men by unseemly violence and riot in the public streets, to the annoyance and terror of peaceable citizens, broken and destroyed the property of appellants, that thereby appellants have acquired a right to make use of the rails of appellee in any portion of 22d street.

We are upon this appeal concerned, not so much with wrongs of which appellee may have been guilty, as with the question of the rights possessed by appellants.

The right given to the Towns company to operate its cars over the tracks of appellee, is upon such terms and conditions by lease or contract as may be agreed upon between the companies owning said tracks or otherwise.

The word "otherwise" does not extend to appellants the right to use these tracks in the absence of either lease, contract, invitation, acquiescence, or estoppel, and in opposition to the will of those by whom the tracks are owned.

The right, in consideration of services rendered the public, to lay tracks in a public street and to operate cars thereon, is a valuable property, and is therefore a property right. How lasting it may be, how it may be regulated or revoked, or taken away, is another matter.

Being property held under certain conditions, it may be forfeited, but it can not, either in whole or in part, be, by the mere will of a legislative body, taken from its owners, either for public or private use.   If it is to be taken for public use, its owners are entitled to just compensation, and that compensation, it would seem, must be ascertained by a jury.   Peoria, Pekin & Jacksonville R. R. Co. v. The Peoria & Springfield R. R. Co., 66 Ill. 174; Central City Horse Ry. Co. v. The Fort Clark Ry. Co., 81 Ill. 523, Chicago, Rock Island & Pacific R. Co. v. Town of Lake, 71 Ill. 333; Cincinnati, LaFayette & Chicago Ry. Co. v. Danville & Vincennes Ry. Co., 75 Ill. 113; Metropolitan City Ry. Co. v. Chicago West Division Ry. Co., 87 Ill. 317; Chicago & Northwestern Ry. Co. v. Chicago & Evanston Ry. Co., 112 Ill. 589.

The decree of the Circuit Court dismissing the bill is therefore affirmed.