## Nels P. Miller, Appellee, v. Cottage Grove State Bank et al., Appellants.

### Gen. No. 38,832.

Opinion filed November 4, 1936.

CHADWICK & JOHNSON, of Chicago, for appellants; RUDOLPH L. JOHNSON and CECIL L. CASS, of Chicago, of counsel.

RUSSELL, MURPHY & PEARSON, of Chicago, for appellee; WALTER WM. PEARSON, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This case comes before us on an appeal from a decree entered on January 10, 1936, in the superior court in favor of Nels P. Miller, plaintiff, and against the Cottage Grove State Bank, a banking corporation, and the stockholders of the said bank. The decree was entered after a hearing on a creditors' bill which had been filed on behalf of all the creditors of the Cottage Grove State Bank, seeking to enforce the statutory liability of all the stockholders of said bank.

Plaintiff's contention is that the capital stock of the bank was on or about June 1, 1923, increased to $200,000 and that the stockholders by accepting said stock as so increased and the dividends thereon are estopped from asserting against plaintiff, and denying liability as stockholders of said bank even if there was a failure of the directors and officers of said bank to comply with certain statutory requirements relative to increasing said stock, being its failure to record the

report of the proceedings relative to said increase with the State auditor and also its failure to file a certificate with the recorder of deeds of Cook county.

Defendants' contention is that the Cottage Grove State Bank was never authorized to do business as a $200,000 corporation; that said bank had an authorized capitalization of only $100,000 and that the liability of the stockholders should have been based upon the authorized capital stock for the latter sum.

The decree found that the stock of the Cottage Grove State Bank was on or about June 1, 1923 increased from $100,000 to $200,000.

There does not appear to be any dispute as to the facts but only as to the law applicable thereto. The record shows that in 1923 an application was made to the auditor of public accounts of the State of Illinois to increase the capital stock of the Cottage Grove State Bank from $100,000 to $200,000 which was granted; that the then officers of the said bank failed to file in the office of said auditor of public accounts a certificate of the adoption of said resolution to increase said capital stock and also failed to file a certificate of said auditor's approval thereof with the recorder of deeds of Cook county, Illinois; that said increase of capital stock was fully subscribed for and certificates representing such increase were issued to and accepted by the subscribers thereof; that when the said additional stock was paid for as required by law, said bank continued to do business with a capital of $200,000; that between the dates of June 30, 1923, and June 30, 1930, 23 dividends were declared on all the capital stock of said bank as so increased and said dividends were paid to and accepted by the holders of the capital stock as increased; that the stockholders of said bank who held stock during any period between June 1, 1923 and June 22, 1932, participated as stockholders in the transactions of said bank.

It is not disputed there was a failure to furnish a report to the auditor of public accounts of the State of Illinois, setting forth the action taken at the meeting of the directors increasing the amount of the capital stock, or that a certificate bearing the auditor's approval was never filed with the recorder of deeds of Cook county, Illinois.

The main question for our consideration in this case is based upon whether or not the failure on the part of the defendants to file a certificate with the auditor of public accounts and a certificate of said auditor's approval with the recorder of deeds, was such a violation of the statute as would justify the reversal of the decree in this case.

Plaintiff contends that the failure of the officers of the bank to file with the auditor of public accounts a certificate to show the action taken by the stockholders to increase the stock, and also their failure to file a certificate bearing the approval of the auditor with the recorder of deeds, was merely an irregularity or informality which does not effect the increase of the stock, and that such irregularity or informality cannot be pleaded to defeat an action to enforce the stockholders' liability.

Defendants contend that the failure to file the certificate with the auditor of public accounts as well as with the recorder of deeds was not in compliance with the statute and, for that reason, the increase in the capital stock of the bank was never legally made; that compliance with the statute is necessary in order to make the increase in the stock and that the stockholders are only liable to the creditors based on the original capital stock of the bank, being for $100,000.

Defendants further contend that they are not estopped in asserting that they are not liable to said stockholders of the bank by reason of the failure of the directors or said officers of the bank to comply with the statutory requirements relative thereto.

Counsel for defendants in calling attention to the violation of the statute cite section 12 of chapter 16a of Cahill's Ill. Rev. Stat. 1923. As this statute was not passed until 1929 and was adopted by a vote of the people on November 4, 1930, we are compelled to refer to the statute as it existed in 1923, when the transaction took place.

Section 12, ch. 16a, ¶ 12, Cahill's Ill. Rev. Stat. 1923, provided as follows.:

". . . a certificate thereof, verified by the affidavit of the president, and under seal of the corporation, shall be filed in the office of the Auditor, and a like certificate filed for record in the office of the recorder of deeds of the county where the principal business office of such corporation is located; and upon the filing of such certificate the changes proposed and voted for at such meeting, as to name, place of business, increase or decrease of capital stock, . . . shall be and is hereby declared accomplished in accordance with the said vote of the stockholders." The statute in existence at that time did not provide for the approval of the auditor or that permission be given nor did it require that an investigation be made. The auditor was merely the official recipient of the certificate and upon the happening of that event the statute declares the increase accomplished.

It is the further contention of the plaintiff that, even admitting that the statutory requirements had not been complied with, the formation of the corporation was *de facto* and not *de jure*.

*Bushnell v. Consolidated Ice Machine Co.,* 138 Ill. 67, was a case where four parties entered into an agreement in writing to form a corporation to be known as the Consolidated Ice Machine Co. of this State and the required steps up to and including the issuing of a certificate of the complete organization of such corporation by the secretary of state as required by sec-

tion 4, chapter 32 of the Revised Statutes, were taken; that in pursuance of that certificate, the complainant together with the directors of said company elected officers for the same "and immediately engaged in business," and continued to do business for a period of more than five years; that for several months the plaintiff continued to be the secretary and soliciting agent for the defendant and was actively engaged in its business; that about January 1, 1885, he became afflicted with melancholia and remained incapacitated for about three years. During his sickness other directors of said company sold certain shares of his stock in said company for a failure on his part to pay instalments due thereon, the sale being made without notice, etc., and that from the time of the sale he was excluded from all participation in the management of the business. After being restored to health, and before plaintiff filed his bill, he made frequent demands to be restored to his rights in said corporation, without avail, etc. After disposing of several minor matters, the court said:

"The only allegation of the bill which is seriously insisted upon as furnishing a ground for the relief prayed is 'that the certificate of complete organization was never recorded in the office of the recorder of deeds for Cook County, where its principal office is located,' the argument being, that in order to constitute the defendant company a corporation under the laws of this State that certificate must have been so recorded, and failing to become incorporated, its members are to be treated as partners."

After reciting the section of the statute relating to the issuance of a certificate by the secretary of state and that the same shall be recorded in a book for that purpose, the court further said:

"But assuming that a corporate existence *de jure* depends upon the filing of the certificate of complete organization in the office of the recorder of deeds of

the county in which its principal office is located, and that the bill properly avers that it was not done in the case of the corporation in question, it by no means follows that it did not become a corporation *de facto* as between the complainant and defendants. From the facts set up in the bill it clearly appears that there was an honest attempt by the incorporators to organize a corporation authorized by the laws of this State. The necessary steps to perfect that organization were all taken as required by the statute, except that the final certificate was not recorded. It is shown by the bill that upon the issuing of that certificate its directors elected the proper officers and proceeded to the transaction of business as a corporation, and continued to act as such until the filing of this bill, a period of more than five years. That these facts established a corporation *de facto* is settled by numerous decisions of this court. *President and Trustees, etc. v. Thompson,* 20 Ill. 198; *Rice v. R. I. & A. R. R. Co.,* 21 id. 93 . . .

"That plaintiff in error, if he had been sued by the Consolidated Ice Machine Company on his subscription to its capital stock, could not have questioned its corporate existence on the grounds alleged in his bill, is directly settled by several of the above cited decisions. It is equally clear that if, during the time he was a member of said corporation, it had been sued as such, neither he nor any other of its members could have been heard to say that no such corporation existed. The general rule is, that one who deals with a corporation as existing *de facto,* is estopped to deny, as against it, that it has been legally organized. It is the settled rule in this State that the legal existence of a corporation *de facto* can not be questioned collaterally. See cases supra, and *Renwick, et al. v. Hall, et al.,* 84 Ill. 162; *The People ex rel. v. Trustees of Schools,* 111 id. 171; *Keigwin, et al. v. Drainage Comrs.,* 115 id. 347.

"It seems impossible to find a reason for placing the complainant in this bill in a more favorable position to deny the existence of the corporation in question than a mere subscriber to its capital stock, or one who, as a third party, had dealt with it as a corporation, and we are of the opinion that he could not do so in this collateral proceeding."

In the case of *Marshall v. Keach,* 227 Ill. 35, at page 42, the court said:

"This court has held that to create a *de facto* corporation there must be a law under which said corporation may be created, together with user under the law. *(American Trust Co. v. Minnesota and Northwestern Railroad Co.,* 157 Ill. 641.) We have also held that where there was an honest attempt of the corporators to organize a corporation under the laws of the State, and all the necessary steps had been taken except that the final certificate had not been recorded by the recorder of deeds, and that thereafter the necessary officers had been elected, who had proceeded to the transaction of business as a corporate body, these facts would establish a corporation *de facto.* *(Bushnell .v. Consolidated Ice Machine Co.,* 138 Ill. 67.) A corporation is a *de facto* one where the law authorizes such corporation and where the company has made an effort to organize under that law and is transacting business in the corporate name. (1 Cook on Stock and Stockholders and Corporation Law,—3d ed. sec. 234; 8 Am. and Eng. Ency. of Law,—2d ed. p. 747.) . . . This court has stated that it is the settled law that neither the eligibility of the directors of a *de facto* corporation nor the rightfulness of its existence could be inquired into collaterally. *(Cincinnati, Lafayette and Chicago Railroad Co. v. Danville and Vincennes Railway Co.,* 75 Ill. 113, and cases there cited; . . ."

In the case of *Hall v. Woods,* 325 Ill. 114, at p. 145, the court said:

"It was held in *People v. Mackey*, 255 Ill. 144, that a failure to file the final certificate of incorporation within two years from its date was fatal to the legal existence of the corporation and justified a judgment of ouster. It has, however, been held in several cases that the organization of a corporation which had failed to file its final certificate of organization within two years after its date was not subject to collateral attack in a suit between the corporation and an individual litigant."

In the case of *Scott v. Deweese*, 181 U. S. 202, which was a case where an increase of the capital stock of the bank had been voted by a majority of the stockholders and the comptroller of the currency had been notified that the whole amount of such increase had been paid in. It was contended by the defendant that the whole amount of the increase had not been paid in. The National Banking Act specified that no increase of capital should be valid until the whole amount of such increase was paid in. In considering this portion of the statute, the Supreme Court of the United States said at page 210:

"Certainly, the statute should not be so applied in behalf of a person sought to be made liable as a shareholder, when, as in the present case, he held, at the time the bank suspended and was put into the hands of a receiver, a certificate of the shares subscribed for by him; enjoyed, by receiving and retaining dividends, the rights of a shareholder; and appeared as a shareholder upon the books of the bank which were open to inspection, as of right, by creditors. Rev. Stat. Sec. 5210. As between the bank and the defendant, the latter having paid the amount of his subscription for shares in the proposed increase of capital was entitled to all the rights of a shareholder, and therefore, as between himself and creditors of the bank, became a shareholder to the extent of the stock subscribed and paid for by him.

That the bank, after obtaining authority to increase its capital, issued certificates of stock without the knowledge or approval of the Comptroller and proceeded to do business upon the basis of such increase before the whole amount of the proposed increase of capital had been paid in, was a matter between it and the Government under whose laws it was organized, and did not render void subscriptions or certificates of stock based upon capital actually paid in, nor have the effect to relieve a shareholder, who became such by paying into the bank the amount subscribed by him, from the individual liability imposed by section 5151.''

In the instant case the evidence shows that an effort was made in good faith by the bank to increase its capital stock which, in fact, was done; that the stock was issued and paid for by the subscribers; that on this new stock issue some 26 dividends were paid by the bank from the earnings over a period of some 11 years. Certainly, in a court of equity the defendants would be estopped from declaring that such stock issue was illegal and in a collateral proceeding defeat their statutory liability, especially after they had owned the stock and received the benefit therefrom. Defendants having received the stock issued to them and considered themselves stockholders in fact should not complain if the law also treated them as such with reference to the liability here involved.

For the reasons herein given we are of the opinion that the decree of the superior court was correct and it is hereby affirmed.

*Decree affirmed.*

HEBEL and HALL, JJ., concur.